ORIGINAL

FILED
MAR 2 9 2004
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation<br>v.<br>THE UNITED STATES | NO. 04- 487C |

# COMPLAINT

For its Complaint, plaintiff Travelers Casualty and Surety Company of America alleges as follows:

## I. PARTIES AND STANDING

1.1 Plaintiff Travelers Casualty and Surety Company of America ("Travelers") is a Connecticut corporation with its principal place of business in the state of Connecticut. Travelers conducts business as an underwriter of surety bonds. Travelers purchased the surety bonding business of Reliance Insurance Company ("Reliance") and related entities in June, 2000. Pursuant to the terms of such purchase agreement, Travelers acquired the rights, duties and obligations under bonds issued by those entities and related agreements executed in their favor.

1.2 The defendant is The United States of America acting through its agency, The Department of the Army, U.S. Army Engineer District, Alaska (the "government").



SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

1.3 Reliance, as surety, issued performance and payment bonds on behalf of Red Samm Construction, Inc. ("RSC") in connection with RSC's contract with the government for the King Cove Harbor Improvements Project in King Cove, Alaska.

1.4 RSC assigned to Reliance all of its rights to payments and claims arising from or relating to the contract. The government, acting through its Contracting Officer, acknowledged and agreed to such assignment and waived the provisions of the Assignment of Claims Act, 31 USC §3727; 41 USC §15. A true and correct copy of RSC's assignment to Reliance and the government's written approval and waiver of the Assignment of Claims Act is attached as Ex. 1.

1.5 By reason of the foregoing, Travelers has the right and standing to maintain this action against the government and pursue RSC's claims arising from the Project.

## II. JURISDICTION

2.1 This action arises from a contract entered between RSC and the government for the Harbor Improvements Project in King Cove, Alaska and a decision by the Contracting Officer dated November 26, 2003, denying RSC's claim for additional compensation due to differing site conditions. This court has jurisdiction of this action pursuant to the Contract Disputes Act, 41 USC §609(a).

## III. KING COVE HARBOR IMPROVEMENT PROJECT AND SOILS INFORMATION PROVIDED BY THE GOVERNMENT

3.1 On December 14, 1998 RSC entered contract No. DACW85-99-C-0003 with the government acting through its Department of the Army, U.S. Army Engineer District, Alaska for the King Harbor Improvements Project ("Project"). The Project involved construction of a breakwater and dredging of a mooring basin and entrance channel at the harbor in King Cove, Alaska. King Cove is a remote site located at the beginning of the Aleutian chain in Alaska.


SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

3.2 The contract documents contained geotechnical and soils information provided by the government as follows: (1) five test pits excavated by backhoe by the government in June, 1996 in the tidal zone at the Project site; and (2) drilling logs from four soil borings performed in November, 1985 for a previous project.

3.3 The government represented the soils information provided by it was representative of the subsurface conditions within the area to be excavated under the contract. The government intended that RSC rely on such information and representation and RSC did so rely.

3.4 The soil boring logs provided by the government with the contract documents indicated fine-grained, silty sands and gravels within the elevations of the dredge area and did not indicate the presence of cobbles or boulders.

3.5 Exploration logs for the five test pits provided by the government with the contract documents indicated sand and gravel with "few" cobbles and boulders. Test pit ("TP") 5 was the only test pit located within the actual dredge area. TP-1, 2 and 4 were located along the shoreline. TP-3 was upland at the base of an adjacent slope. Exploration logs for all five test pits included with the contract documents all described the surface material as silty sand. Subsurface material classifications as contained in the exploration logs for the five test pits were as follows:

| | |
|---|---|
| TP-1 | Gravel w/few Cobbles & Boulders |
| TP-2 | Gravel w/Cobbles & Boulders |
| TP-3 | Weathered Bedrock |
| TP-4 | Gravel |
| TP-5 | Gravel w/few Cobbles |

3.6 The soils information contained in the contract documents as a whole indicated fine, sandy materials with few, if any, cobbles and boulders and indicated subsurface conditions which were entirely suitable for use of hydraulic or suction dredging methods and equipment. Based on the indications of subsurface conditions provided in the


SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

contract documents, RSC concluded suction dredging would be feasible and appropriate. RSC purchased appropriate suction dredging equipment for the Project and planned its dredging operations in such fashion.

3.7 RSC further confirmed the information and indications of the subsurface conditions provided in the soils logs contained in the contract documents by excavating three additional backhoe test pits in the shoreline area during the first construction season in 1999 during which the breakwater was constructed. Those test pits all revealed gravel and sand without cobble or boulders.

## IV. DIFFERING SITE CONDITIONS ENCOUNTERED BY RSC

4.1 RSC mobilized to the Project site for the second construction season in June, 2000. RSC commenced suction dredging operations in the northern portion of the dredge area on July 12, 2000.

4.2 RSC's suction dredging operations were severely hindered by subsurface conditions consisting of substantial concentrations of large cobbles which prevented effective use of RSC's suction dredging equipment and would not allow cost effective production quantities of dredged materials as anticipated and planned by RSC.

4.3 The actual subsurface conditions encountered by RSC were materially different from those indicated in the contract documents and constituted a differing site condition.

4.4 Daily reports submitted by RSC to the government between July 12 and July 18, 2000 advised the government of significant concentration of cobbles being encountered by RSC and the impact of the adverse subsurface conditions upon RSC's operations.

4.5 On July 18, 2000, RSC's serial letter no. 109-034 notified the government RSC had encountered a differing site condition.

4.6 Between July 18, 2000 and August 8, 2000, RSC attempted various mortifications to its equipment and dredging techniques in an effort to mitigate its damages


SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

and overcome the differing site conditions. However, due to those conditions, RSC was unable to achieve meaningful production quantities with its suction dredging operation and shut down that operation on August 8, 2000. As of that time, RSC had only been able to dredge approximately 10,000 cubic yards of material, out of a total estimated contract quantity of 361,100 cubic yards.

4.7 RSC took all reasonably available actions to mitigate its damages due to the differing site conditions and mobilized the only locally available dump scow to work in conjunction with RSC's onsite equipment. With such equipment RSC implemented a clam shall dredging operation on or about August 22, 2000. RSC further mobilized excavators and haul trucks to perform shoreline excavation work in September, 2000. However, RSC was unable to complete the required dredging during the 2000 construction season. RSC was forced to shutdown for the winter and resume operations during a third construction season in 2001. The remaining dredging work, in the approximate quantity of 250,000 cubic yards, was performed in 2001 by Western Marine Construction, a subcontractor to RSC, at a substantial additional and unanticipated cost.

## V. RSC REQUEST FOR EQUITABLE ADJUSTMENT AND CONTRACTING OFFICER'S DECISION

5.1 On or about October 30, 2001, RSC submitted a properly certified Request for Equitable Adjustment ("REA") as a result of the differing site conditions encountered by it on the Project. The REA sought additional compensation in the amount of $2,729,242.09 and 335 days of contract performance time extension.

5.2 In a final decision dated November 26, 2003 ("COD"), the Contracting Officer denied RSC's claim for differing site conditions based on the erroneous assertion that actual conditions encountered by RSC did not differ materially from those indicated in the contract documents. The COD disclosed for the first time that in developing the soil


SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

descriptions and classifications in the exploration logs for the test pits, the government purportedly employed the practices and procedures of ASTM Specification D2488.

5.3 Less than twelve months have elapsed since receipt by RSC of the COD.

## VI. FIRST CAUSE OF ACTION-DIFFERING SITE CONDITIONS

6.1 Plaintiff realleges and incorporates by this reference as if set forth in full paragraphs 1.1 through 5.3 of its Complaint.

6.2 RSC encountered subsurface conditions at the site that differed materially from those indicated in the contract documents. RSC incurred additional cost in the principal sum of $2,729,242.09 for which plaintiff is entitled to compensation from the government pursuant to the differing site conditions clause of the contract. Plaintiff is further entitled to prejudgment interest on such amount from the date of RSC's October 30, 2001 certification of its claim.

## VII. SECOND CAUSE OF ACTION-MISREPRESENTATION

7.1 Plaintiff realleges and incorporates by this reference as if set forth in full paragraphs 1.1 through 6.2 of its Complaint.

7.2 The government misrepresented the classification and nature of the subsurface materials in samples obtained by the government in excavation by it of test pits 1-5. The contract documents failed to disclose the government had employed the procedures of ASTM D2488. The government further failed to properly implement those procedures. As a result the exploration logs were inaccurate and materially misleading.

7.3 The government intended for RSC to rely on the exploration logs and RSC did so to its detriment.

7.4 Specific misrepresentations and failures on the part of the government to follow ASTM D2488 in preparation and production of the exploration logs are as follows:

a. Paragraph 1.1 of ASTM D2488 requires that where its procedures and practices are used in reporting any soil identification such fact must be clearly stated. The


SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

contract documents nowhere disclosed or advised RSC that the practices and procedures of ASTM D2488 were employed by the government in developing the exploration logs for test pits 1-5.

b. Paragraph 10.11.3 of ASTM D2488 requires where the maximum particle size of a soil sample is a cobble or boulder, the maximum dimension of the largest such particle should be reported. No dimensions for cobbles or boulders were included in the information contained in the exploration logs provided by the government for test pits 1-5.

c. Paragraph 12.2 of ASTM D2488 requires an estimate of the percentage of cobbles and boulders within the sample based on volume. No estimated percentages of cobbles or boulders were included in the exploration logs for test pits 1-5 provided and prepared by the government.

d. ASTM D2488 requires that the percentages of gravel, sands, and fines within a sample be reported by weight. No such information was provided by the government in the exploration logs for test pits 1-5.

7.5 As a direct and proximate result of the government's misrepresentations and failure to properly implement the practices and procedures of ASTM D2488, RSC has incurred additional cost and damages for which the government is liable to plaintiff in the amount of $2,729,242.09.

## VIII. THIRD CAUSE OF ACTION-NONDISCLOSURE OF SUPERIOR KNOWLEDGE

8.1 Plaintiff realleges and incorporates by this reference as if set forth in full paragraphs 1.1 through 7.5 of its Complaint.

8.2 The fact the government intended to employ the practices and procedures of ASTM D2488 in preparing exploration logs for test pits 1-5 included by the government within the contract documents was material information known only to the government, unavailable to RSC, and which the government had a duty to disclose.


SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

8.3 The government failed to disclose such superior information and knowledge and as a direct and proximate result RSC was mislead and incurred additional costs in the amount of $2,279,242.09 for which the government is liable to plaintiff.

## IX. FOURTH CAUSE OF ACTION-UNPAID CONTRACT BALANCE

9.1 Plaintiff realleges and incorporates by this reference as if set forth in full, paragraph 1.1 through 8.3 of its Complaint.

9.2 The government has improperly withheld from payment to RSC or plaintiff $213,460 in earned contract balance before any adjustment for claims asserted by RSC. The government is liable to plaintiff in such amount together with prejudgment interest thereon.

WHEREFORE, Travelers prays for relief as follows:

1. Judgment on RCS's claims against the government for additional compensation in the principal amount of $2,279,242.09 or such other and further amount as may be proven at trial, together with prejudgment interest thereon;

2. Judgment against the government in the amount of $213,460 for unpaid contract balance, together with prejudgment interest thereon;

3. Judgment awarding Travelers prejudgment interest from October 30, 2001, the date of RSC's certified claim;

4. For such other and further relief as the court deems just and appropriate under the circumstances.

DATED this 26 day of March, 2004.

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.

By: James T. Hopkins

James T. Hopkins, WSBA #11856
Attorney for Travelers Casualty and Surety Company of America


SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

ASSIGNMENT

FOR VALUE RECEIVED, the undersigned, Red Samm Construction, Inc. hereinafter called ASSIGNOR, hereby assigns, transfers and sets over to the Reliance Insurance Company, hereinafter called SURETY, all contract funds of any nature, including, but not limited to, progress payments, earned or unearned funds, change orders, extras, claims of any nature, retainages, whether held in escrow accounts, Certificates of Deposit, or similar accounts or instruments, with all the interest accruing thereon, and whether said contract funds are due now or in the future under the following described contract:

| | |
|---|---|
| Bond No.: | B2922420 |
| Contract No.: | DACW85-99-C-0003 |
| Project: | Harbor Improvements, King Cove, Alaska |
| Obligee: | Department of the Army |

ASSIGNOR hereby constitutes and appoints the SURETY its true, lawful and irrevocable attorney-in-fact to demand, receive and enforce payments, to execute estimates, final payments, payment warrants, vouchers, drafts, and/or checks, and to give receipts, releases of any nature, satisfactions for, and to sue for all Contract Funds payable to the Assignor and this may be done either in the name of the ASSIGNOR or in the name of the SURETY with the same force and effect as the ASSIGNOR could do if this assignment had not been made. Any and all moneys or payments that may be received by the ASSIGNOR to which the SURETY is entitled under and by reason of this Assignment will be received by ASSIGNOR as trustee for the SURETY and will be immediately delivered in kind to SURETY without commingling. ASSIGNOR hereby represents and warrants to the SURETY that the moneys above have not heretofore been alienated or assigned.

This Assignment is irrevocable and shall remain in full force and effect until its release in writing by SURETY. Notice of this Assignment may be given at the option of the SURETY. The general nature of the business out of which the accounts assigned herein arise or are to arise is harbor dredging and such business is or will be carried on out of King Cove, Alaska. This Assignment and all related documents are in furtherance of the SURETY's right of subrogation and General Agreement of Indemnity entered between ASSIGNOR and SURETY and not in derogation thereof.

IN WITNESS WHEREOF, the Assignor has caused its name to be subscribed hereto this 9TH day of APRIL, 2001.

RED SAMM CONSTRUCTION, INC.

By: [signature]

Title: PRES

The Department of Army ("ARMY") acknowledges that it received a copy of this Assignment on March ______, 2001. ARMY hereby waives the protection of the Assignment of Claims Act (31 U.S.C. § 3727; 41 U.S.C. § 15) for the limited purpose of honoring RELIANCE's rights of equitable subrogation and the assignment by RED SAMM to RELIANCE of all claims and monies due or to become due under the above-referenced Contract. ARMY agrees that all moneys paid under the above-reference Contract shall be disbursed by wire transfer to the following account:

| | |
|---|---|
| Bank Name: | Bank One |
| ABA Number: | 071000013 |
| City, State: | Chicago, IL |
| Account No.: | 10-54394 |
| Account Name: | Reliance Grantor Trust for the benefit of Travelers Casualty and Surety Company |
| Contractor Ref.: | Red Samm Construction/Bond No. B2922420 |

DEPARTMENT OF THE ARMY

By: [signature]

Title: Contracting Officer

EXHIBIT 1