HONORABLE LAWRENCE J. BLOCK

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation

v.

THE UNITED STATES

NO. 04-487

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiff Travelers Casualty and Surety Company of America moves the court, pursuant to RCFC 15, for an order granting it leave to amend its complaint and file a first amended complaint in the form and style of the attached Ex. A.

DATED this 27th day of October, 2005.

*S/ James T. Hopkins*
James T. Hopkins, WSBA #11856
Schiffrin Olson Schlemlein & Hopkins, PLLC
1601 Fifth Ave., Suite 2500
Seattle, WA 98101
Telephone: (206) 448-8100/Fax (206) 448-8514
Email: jth@soslaw.com
Attorneys for plaintiff Travelers Casualty and Surety Co. of America

## CERTIFICATE OF SERVICE

I hereby certify that on, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system. I caused to be served upon counsel of record, at the address(es) stated below, via the method of service indicated, a true and correct copy of the following documents:

J. Reid Prouty
Department of Justice
1100 L Street NW
11th Floor
Washington, DC 20530
Via Hand Delivery

I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

EXECUTED at Seattle, Washington this, 27th of October, 2005.

S/ James T. Hopkins
James T. Hopkins, WSBA #11856
Schiffrin Olson Schlemlein & Hopkins, PLLC
1601 Fifth Ave., Suite 2500
Seattle, WA 98101
Telephone: (206) 448-8100/Fax (206) 448-8514
Email: jth@soslaw.com
Attorneys for plaintiff Travelers Casualty and Surety Co. of America

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation<br><br>v.<br><br>THE UNITED STATES | NO. 04-487<br><br>**FIRST AMENDED COMPLAINT** |

For its First Amended Complaint, plaintiff Travelers Casualty and Surety Company of America alleges as follows:

## I. PARTIES AND STANDING

1.1 Plaintiff Travelers Casualty and Surety Company of America ("Travelers") is a Connecticut corporation with its principal place of business in the state of Connecticut. Travelers conducts business as an underwriter of surety bonds. Travelers purchased the surety bonding business of Reliance Insurance Company ("Reliance") and related entities in June, 2000. Pursuant to the terms of such purchase agreement, Travelers acquired the rights, duties and obligations under bonds issued by those entities and related agreements executed in their favor.

1.2 The defendant is The United States of America acting through its agency, The Department of the Army, U.S. Army Engineer District, Alaska (the "government").



EXHIBIT A

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

3

1.3 Reliance, as surety, issued performance and payment bonds on behalf of Red Samm Construction, Inc. ("RSC") in connection with RSC's contract with the government for the King Cove Harbor Improvements Project in King Cove, Alaska.

1.4 RSC assigned to Reliance all of its rights to payments and claims arising from or relating to the contract. The government, acting through its Contracting Officer, acknowledged and agreed to such assignment and waived the provisions of the Assignment of Claims Act, 31 USC §3727; 41 USC §15. A true and correct copy of RSC's assignment to Reliance and the government's written approval and waiver of the Assignment of Claims Act is attached as Ex. 1.

1.5 By reason of the foregoing, Travelers has the right and standing to maintain this action against the government and pursue RSC's claims arising from the Project.

## II. JURISDICTION

2.1 This action arises from a contract entered between RSC and the government for the Harbor Improvements Project in King Cove, Alaska and a decision by the Contracting Officer dated November 26, 2003, denying RSC's claim for additional compensation due to differing site conditions. This court has jurisdiction of this action pursuant to 28 USC § 1491(a)(1) and the Contract Disputes Act, 41 USC §609(a).

## III. KING COVE HARBOR IMPROVEMENT PROJECT AND SOILS INFORMATION PROVIDED BY THE GOVERNMENT

3.1 On December 14, 1998 RSC entered contract No. DACW85-99-C-0003 with the government acting through its Department of the Army, U.S. Army Engineer District, Alaska for the King Harbor Improvements Project ("Project"). The Project involved construction of a breakwater and dredging of a mooring basin and entrance channel at the



SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

harbor in King Cove, Alaska. King Cove is a remote site located at the beginning of the Aleutian chain in Alaska.

3.2 The contract documents contained geotechnical and soils information provided by the government as follows: (1) five test pits excavated by backhoe by the government in June, 1996 in the tidal zone at the Project site; and (2) drilling logs from four soil borings performed in November, 1985 for a previous project.

3.3 The government represented the soils information provided by it was representative of the subsurface conditions within the area to be excavated under the contract. The government intended that RSC rely on such information and representation and RSC did so rely.

3.4 The soil boring logs provided by the government with the contract documents indicated fine-grained, silty sands and gravels within the elevations of the dredge area and did not indicate the presence of cobbles or boulders.

3.5 Exploration logs for the five test pits provided by the government with the contract documents indicated sand and gravel with "few" cobbles and boulders. Test pit ("TP") 5 was the only test pit located within the actual dredge area. TP-1 was within approximately twenty feet of the dredge area and located below the high tide line. TPs 2 and 4 were located at or above the high tide line. TP-3 was upland at the base of an adjacent slope. Exploration logs for TPs 1 and 5 described the surface material as silty sand. Subsurface material classifications as contained in the exploration logs for the five test pits were as follows:

| | |
|---|---|
| TP-1 | Gravel w/few Cobbles & Boulders |
| TP-2 | Gravel w/Cobbles & Boulders |
| TP-3 | Weathered Bedrock |
| TP-4 | Gravel |



SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

TP-5 Gravel w/few Cobbles

3.6 The soils information contained in the contract documents as a whole indicated fine, sandy materials with few, if any, cobbles and boulders and indicated subsurface conditions which were entirely suitable for use of hydraulic or suction dredging methods and equipment. Based on the indications of subsurface conditions provided in the contract documents, RSC concluded suction dredging would be feasible and appropriate. RSC purchased appropriate suction dredging equipment for the Project and planned its dredging operations in such fashion.

3.7 RSC further confirmed the information and indications of the subsurface conditions provided in the soils logs contained in the contract documents by excavating three additional backhoe test pits in the shoreline area during the first construction season in 1999 during which the breakwater was constructed. Those test pits all revealed gravel and sand without cobble or boulders.

## IV. DIFFERING SITE CONDITIONS ENCOUNTERED BY RSC

4.1 RSC mobilized to the Project site for the second construction season in June, 2000. RSC commenced suction dredging operations in the northern portion of the dredge area on July 12, 2000.

4.2 RSC's suction dredging operations were severely hindered by subsurface conditions consisting of substantial concentrations of large cobbles which prevented effective use of RSC's suction dredging equipment and would not allow cost effective production quantities of dredged materials as anticipated and planned by RSC.



SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

4.3 The actual subsurface conditions encountered by RSC were materially different from those indicated in the contract documents and constituted a differing site condition.

4.4 Daily reports submitted by RSC to the government between July 12 and July 18, 2000 advised the government of significant concentration of cobbles being encountered by RSC and the impact of the adverse subsurface conditions upon RSC's operations.

4.5 On July 18, 2000, RSC's serial letter no. 109-034 notified the government RSC had encountered a differing site condition.

4.6 Between July 18, 2000 and August 8, 2000, RSC attempted various modifications to its equipment and dredging techniques in an effort to mitigate its damages and overcome the differing site conditions. However, due to those conditions, RSC was unable to achieve meaningful production quantities with its suction dredging operation and shut down that operation on August 8, 2000. As of that time, RSC had only been able to dredge approximately 10,000 cubic yards of material, out of a total estimated contract quantity of 361,100 cubic yards.

4.7 RSC took all reasonably available actions to mitigate its damages due to the differing site conditions and mobilized the only locally available dump scow to work in conjunction with RSC's onsite equipment. With such equipment RSC implemented a clam shall dredging operation on or about August 22, 2000. RSC further mobilized excavators and haul trucks to perform shoreline excavation work in September, 2000. However, RSC was unable to complete the required dredging during the 2000 construction season. RSC was forced to shutdown for the winter and resume operations during a third construction season in 2001. The remaining dredging work, in the approximate quantity of 250,000 cubic yards, was



SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

performed in 2001 by Western Marine Construction, a subcontractor to RSC, at a substantial additional and unanticipated cost.

## V. RSC REQUEST FOR EQUITABLE ADJUSTMENT AND CONTRACTING OFFICER'S DECISION

5.1 On or about October 30, 2001, RSC submitted a properly certified Request for Equitable Adjustment ("REA") as a result of the differing site conditions encountered by it on the Project. The REA sought additional compensation in the amount of $2,729,242.09 and 335 days of contract performance time extension.

5.2 In a final decision dated November 26, 2003 ("COD"), the Contracting Officer denied RSC's claim for differing site conditions based on the erroneous assertion that actual conditions encountered by RSC did not differ materially from those indicated in the contract documents. The COD disclosed for the first time that in developing the soil descriptions and classifications in the exploration logs for the test pits, the government purportedly employed the practices and procedures of ASTM Specification D2488.

5.3 Less than twelve have elapsed since receipt by RSC of the COD and the initial filing of this action..

## VI. FIRST CAUSE OF ACTION-DIFFERING SITE CONDITIONS

6.1 Plaintiff realleges and incorporates by this reference as if set forth in full paragraphs 1.1 through 5.3 of its First Amended Complaint.

6.2 RSC encountered subsurface conditions at the site that differed materially from those indicated in the contract documents. RSC incurred additional cost in the principal sum of $2,729,242.09 for which plaintiff is entitled to compensation from the government pursuant to the differing site conditions clause of the contract. Plaintiff is further entitled to



SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

prejudgment interest on such amount from the date of RSC's October 30, 2001 certification of its claim.

## VII. SECOND CAUSE OF ACTION-MISREPRESENTATION

7.1 Plaintiff realleges and incorporates by this reference as if set forth in full paragraphs 1.1 through 6.2 of its First Amended Complaint.

7.2 The government misrepresented the classification and nature of the subsurface materials in samples obtained by the government in excavation by it of test pits 1-5. The contract documents failed to disclose the government had employed the procedures of ASTM D2488. The government further failed to properly implement those procedures. The test pit logs as prepared by the government did not accurately convey or describe the determinations or estimates of the government geotechnical engineer who performed the sampling as to the extent or concentration of cobbles in the samples or the subsurface materials at the site. As a result the exploration logs were inaccurate and materially misleading.

7.3 The government intended for RSC to rely on the exploration logs and RSC did so to its detriment.

7.4 Specific misrepresentations and failures on the part of the government to follow ASTM D2488 in preparation and production of the exploration logs are as follows:

a. Paragraph 1.1 of ASTM D2488 requires that where its procedures and practices are used in reporting any soil identification such fact must be clearly stated. The contract documents nowhere disclosed or advised RSC that the practices and procedures of



SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

ASTM D2488 were employed by the government in developing the exploration logs for test pits 1-5.

b. Paragraph 10.11.3 of ASTM D2488 requires where the maximum particle size of a soil sample is a cobble or boulder, the maximum dimension of the largest such particle should be reported. No dimensions for cobbles or boulders were included in the information contained in the exploration logs provided by the government for test pits 1-5.

c. Paragraph 12.2 of ASTM D2488 requires an estimate of the percentage of cobbles and boulders within the sample based on volume. No estimated percentages of cobbles or boulders were included in the exploration logs for test pits 1-5 provided and prepared by the government.

d. ASTM D2488 requires that the percentages of gravel, sands, and fines within a sample be reported by weight. No such information was provided by the government in the exploration logs for test pits 1-5.

7.5 As a direct and proximate result of the government's misrepresentations and failure to properly implement the practices and procedures of ASTM D2488, RSC has incurred additional cost and damages for which the government is liable to plaintiff in the amount of $2,729,242.09.

## VIII. THIRD CAUSE OF ACTION-NONDISCLOSURE OF SUPERIOR KNOWLEDGE

8.1 Plaintiff realleges and incorporates by this reference as if set forth in full paragraphs 1.1 through 7.5 of its First Amended Complaint.

8.2 The government geotechnical engineer, who performed the test pit exploration for the project and prepared test pit logs, also prepared a geotechnical report which reflected his observations, estimates and conclusions as to the test pit samples and subsurface



SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

conditions at the site. The geotechnical report described greater subsurface concentrations of cobbles at the site than the test pit exploration logs included in the contract documents. The geotechnical report was intended to convey "significant" concentration of such cobbles, yet the test pit logs indicated only a "few" cobbles. The geotechnical report contained vital and material information affecting the contractor's performance costs and decisions regarding the methodology and equipment necessary to perform the work. Because of the subjective, non-standard and misleading terminology employed in the test pit logs, knowledge of the geotechnical report was necessary to properly understand the results of the government's test pit samples. The government was aware the contractor had no knowledge of the geotechnical report and no reason to inquire of, or obtain, such report.

8.3 The fact the government intended to employ the practices and procedures of ASTM D2488 in preparing exploration logs for test pits 1-5 included by the government within the contract documents was also material information known only to the government, unavailable to RSC, and which the government had a duty to disclose.

8.4 The geotechnical report and intended use of ASTM 2488 procedures constituted superior knowledge that the government had a duty to disclose. The government failed to disclose such superior knowledge and as a direct and proximate result RSC was mislead and incurred additional costs in the amount of $2,279,242.09 for which the government is liable to plaintiff.

## IX. FOURTH CAUSE OF ACTION-UNPAID CONTRACT BALANCE

9.1 Plaintiff realleges and incorporates by this reference as if set forth in full, paragraph 1.1 through 8.4 of its First Amended Complaint.



SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

9.2 The government has improperly withheld from payment to RSC or plaintiff $213,460 in earned contract balance before any adjustment for claims asserted by RSC. The government is liable to plaintiff in such amount together with prejudgment interest thereon.

WHEREFORE, Travelers prays for relief as follows:

1. Judgment on RCS's claims against the government for additional compensation in the principal amount of $2,279,242.09 or such other and further amount as may be proven at trial;

2. Judgment against the government in the amount of $213,460 for unpaid contract balance, together with prejudgment interest thereon..

3. Judgment awarding Travelers prejudgment interest from October 30, 2001, the date of RSC's certified claim;

4. For such other and further relief as the court deems just and appropriate under the circumstances.

DATED this ___ day of October, 2005.

*S/ James T. Hopkins*
James T. Hopkins, WSBA #11856
Schiffrin Olson Schlemlein & Hopkins, PLLC
1601 Fifth Ave., Suite 2500
Seattle, WA 98101
Telephone: (206) 448-8100/Fax (206) 448-8514
Email: jth@soslaw.com
Attorneys for plaintiff Travelers Casualty and Surety Co. of America

# NAVIGATION IMPROVEMENTS
# KING COVE, ALASKA

## APPENDIX C
## GEOTECHNICAL REPORT

### 1. Scope

The results of a reconnaissance visit and test pit exploration for the south expansion of the small boat harbor in King Cove are presented in this report.

The scope of the visit was to explore for bedrock within the south expansion area and to evaluate subsurface conditions with regard to dredging.

### 2. Project Location and Description

King Cove is located on the Alaska Peninsula about 600 miles southwest of Anchorage. The south expansion alternative entails dredging a new basin and constructing associated breakwaters just south of the existing boat harbor. Basin dredging is proposed to extend to about elevation -15 ft MLLW with side slopes of 3 horizontal:1 vertical.

### 3. Field Exploration

The subsurface exploration for the project was conducted on July 29, 1996. Five test pits were excavated to depths of about 5 to 10 feet with an excavator owned by King Cove and operated by city personnel. The excavation of the test pits was supervised and logged by an engineer with the Corps of Engineers. The test pit locations were measured by the engineer with a cloth tape referencing the existing causeway. The locations of the test pits are shown in figure C-1.

### 4. Site Conditions

**a. Surface:** The tidal fluctuation at King Cove ranges approximately from elevation 10.5 ft MLLW to -3.5 ft MLLW, based on U.S. Coast and Geodetic Survey records. The areas to be dredged are located within this intertidal zone and also within the subtidal zone. The ground surface in the areas to be dredged ranges in elevation from about 4 ft MLLW to -6 ft MLLW and is covered primarily with gravel, cobbles, and boulders above -2 ft and silty sand below -2 ft (photo 1).

**b. Subsurface:** The test pits indicate the basin area to be underlain primarily by gravel containing some cobbles and boulders (photos 2 and 3). Where encountered, the surfacial silty sand was found to extend to depths less than 1-1/2 feet (photo 4). The soils were easy to excavate with the backhoe, but caving of the sidewalls limited excavation depth to about 10 feet. The exception to these conditions is that bedrock





EXHIBIT I

13

was encountered in test pit 3, located in the southwest corner of the proposed basin. The upper portion of the bedrock was weathered, and the backhoe was able to excavate about 4 feet into the bedrock due to the weathered nature (photo 5).

## 5. Discussion and Analysis

The two items of concern for the dredging are (1) the dredgibility of the basin soils, and (2) the stability of the basin side slopes. These items are discussed below.

**a. Dredging Feasibility:** Bedrock appears to be within the extreme southwest corner of the proposed basin limits and is therefore of concern. The gravel soils containing cobbles and boulders should not present major problems, provided the equipment used to dredge these materials is commensurate with those conditions.

**b. Stability:** The gravel soils will be influenced by tidal fluctuation and wave erosion. A maximum slope of about 3 horizontal:1 vertical is estimated for these materials based on experience and observations of existing slopes at the site.

## 6. Conclusions

The improvements to the small boat harbor can be accomplished as planned. If this site is selected, it is recommended that an appropriate geophysical exploration be conducted to locate the bedrock surface within the southwest corner of the proposed basin. If the bedrock is indeed within dredging limits, appropriate removal action will be required.




|  | STATION | *OFFSET |
|---|---|---|
| TP-1 | 10+00 | 170' |
| TP-2 | 10+00 | 70' |
| TP-3 | 10+50 | 20' |
| TP-4 | 9+00 | 30' |
| TP-5 | 8+00 | 170' |

* OFFSET FROM HIGH TIDE MARK

| | |
|---|---|
| SCALE: | NTS |
| DATE | JULY 1996 |
| DWG/RVW | CRW/JR |

ALASKA DISTRICT
CORPS OF ENGINEERS
CIVIL WORKS BRANCH

# TEST PIT LOCATION MAP

NAVIGATION IMPROVEMENTS
KING COVE, ALASKA

C-1

HONORABLE LAWRENCE J. BLOCK

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation<br><br>v.<br><br>THE UNITED STATES | NO. 04-487<br><br>**ORDER [Proposed] GRANTING PLAINTIFF LEAVE TO AMEND COMPLAINT** |

This matter came regularly before the court upon plaintiff's Motion for Leave to Amend its Complaint. The court considered plaintiff's motion and supporting memorandum, the government's response and deems itself fully advised.

NOW THEREFORE, IT IS HEREBY ORDERED:

Plaintiff's motion is granted. Plaintiff is granted leave to file a first amended complaint in the form and style of Ex. A, attached to its motion.

Dated this ____ day of November, 2005.

UNITED STATES COURT OF FEDERAL CLAIMS

____________________________________
JUDGE LAWRENCE J. BLOCK



SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
1601 Fifth Avenue, Suite 2500
Seattle WA 98101
(206) 448-8100 Fax (206) 448-8514

Presented by:

*S/ James T. Hopkins*
James T. Hopkins, WSBA #11856
Schiffrin Olson Schlemlein & Hopkins, PLLC
1601 Fifth Ave., Suite 2500
Seattle, WA 98101
Telephone: (206) 448-8100/Fax (206) 448-8514
Email: jth@soslaw.com
Attorneys for plaintiff Travelers Casualty and Surety Co. of America