No. 04-487 C
(Judge Block)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JAMES M. KINSELLA
Deputy Director

J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., - 8th Floor
Washington, D.C. 20530
Tele: (202) 305-7586
Fax: (202) 514-7969

Attorneys for Defendant

March 27, 2006

# TABLE OF CONTENTS

Page

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . . . 1

I. Nature Of The Case . . . . . 1

II. Statement Of Facts . . . . . 3

LAW AND ARGUMENT . . . . . 3

I. Standards For Summary Judgment . . . . . 4

II. Travelers Cannot Support A Type I Differing Site Conditions Claim . . . . . 4

A. The Solicitation's Terms Do Not Support A Type I Differing Site Condition Claim . . . . . 5

1. To Support A Type I Differing Site Condition, The Specifications Must Make Reasonably Plain Indications Of The Conditions To Be Encountered . . . . . 5

2. The Contract Made No Representation Regarding The Percentage Of Cobbles Throughout The Dredge Area . . . . . 6

B. Travelers Cannot Recover Because Red Samm's Bid Was Not Based Upon The Corps Test Pit Logs . . . . . 7

1. A Contractor May Not Recover Upon A Differing Site Condition Claim Unless It Actually Relied Upon The Allegedly Deficient Specifications When Preparing Its Bid . . . . . 7

2. Travelers Cannot Recover Because Red Samm Did Not Rely Upon The CorpsTest Pit Logs . . . . . 7

C. Travelers Cannot Recover Because Red Samm Did Not Consult Documents, Referenced In The Solicitation, Which It Admits Would Have Warned It Of The Site Conditions . . . . . 9

**TABLE OF CONTENTS**
-continued-


1. A Contractor May Not Recover Upon A Differing Site Conditions Claim If The Contract References Documents Which Would Have Placed The Contractor Upon Notice Of The Site Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2. Because The Golder Report, Referenced In The Solicitation, Would Have Put Red Samm Upon Additional Notice Of The Site Conditions, Travelers Cannot Recover . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

D. Travelers Cannot Recover Because Red Samm Did Not Seek Clarification Of A Patent Ambiguity . . . . . . . . . . . . . . . . . . . . 10

1. A Contractor Which Does Not Seek Clarification Of A Patent Ambiguity Will Have The Contract Construed Against It . . . . . 10

2. The Term, "Few," In The Contract Specifications Is Patently Ambiguous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

3. Travelers Cannot Recover Because Red Samm Made No Inquiry . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III. Travelers Cannot Support Its Misrepresentation Claim . . . . . . . . . . . . . . . . . . . 12

A. A Cause Of Action For Misrepresentation Requires Both An Erroneous Representation Of Fact And Reliance Upon The Misrepresentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

B. The Corps Made No Erroneous Representation . . . . . . . . . . . . . . . . . . . 12

C. Red Samm Did Not Rely Upon The Representations In The Test Pit Logs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV. Travelers' Superior Knowledge Claim Should Be Dismissed . . . . . . . . . . . . . . . 14

A. To Prevail In A Superior Knowledge Claim Travelers Must Prove That Red Samm Was Misled By The Corps' Withholding Of Information Which The Corps Would Have No Reason To Believe That Red Samm Could Find For Itself . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**TABLE OF CONTENTS**
-continued-


B. The Corps Withheld No Vital Fact From Red Samm . . . . . . . . . . . . . . . . 15

C. The Government Had Reason To Believe That Red Samm Could Obtain The Information It Possessed . . . . . . . . . . . . . . . . . . . . . . . 17

V. Travelers Is Owed Nothing Upon Its Contract Balance Claim . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

A.S. McGaughan Company, Inc. v. United States,
24 Cl.Ct. 659 (1991) . . . . . . . . 8

American Ship Building Company v. United States,
228 Ct. C 654 F.2d 75 (1981) . . . . . . . . 14, 16, 17

Anderson v. Liberty Lobby Inc.,
477 U.S. 242 (1986) . . . . . . . . 4

P.R. Burke Corp. v. United States,
277 F.3d. 1346 (Fed. Cir. 2002) . . . . . . . . passim

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . 4

Comtrol, Inc. v. United States,
294 F.3d 1357 (Fed. Cir. 2002) . . . . . . . . passim

Curtis v. United States,
144 Ct. C 168 F. Supp. 213 (1958), cert. denied 361 U.S. 843 (1959) . . . . . . . . 4

Grumman Data Sys. Corp. v. Dalton,
88 F.3d 990 (Fed. Cir. 1996) . . . . . . . . 10

H.B. Mac, Inc. v. United States,
153 F.3d 1338 (Fed. Cir. 1998) . . . . . . . . 4, 5, 8

H.N. Bailey & Associates v. United States,
196 Ct. C 449 F.2d 376 (1971) . . . . . . . . 14, 17

Hunt Constr. Grp., Inc. v. United States,
281 F.3d 1369 (Fed. Cir. 2002) . . . . . . . . 10

Interwest Construction v. Brown,
29 F.3d 611 (Fed. Cir. 1994) . . . . . . . . 10, 11, 13

L.G. Everist v. United States,
231 Ct. Cl. 1013 (1982) . . . . . . . . 17

## TABLE OF AUTHORITIES
**-continued-**

**CASES** **PAGE(s)**

P.J. Maffei Bldg. Wrecking Corp. v. United States,
732 F.2d 913 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 9

Randa/Madison Joint Venture III v. Dahlberg,
239 F.3d 1264 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Spirit Leveling Contractors v. United States,
19 Cl. Ct. 84 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Sweats Fashions, Inc. v. Pannill Knitting, Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

T. Brown Constructors, Inc. v. Pena,
132 F.3d 724 (Fed. Cir. 1997), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Roseburg Lumber Co. v. Madigan,
978 F.2d 660 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Weeks Dredging & Contr., Inc. v. United States,
13 Cl. Ct. 193 (1987), aff'd, 861 F.2d
728 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-487C (Judge Block) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court enter summary judgment in our favor because there are no genuine issues of material fact in this case and defendant is entitled to judgment as a matter of law. In support of our motion, we rely upon plaintiff's pleadings, our brief, and the accompanying Proposed Findings of Uncontroverted Facts.

I. Nature Of The Case

Red Samm Construction Company ("Red Samm")[1], was engaged by the United States Army Corps of Engineers ("the Corps") to improve a small boat harbor in King Cove, Alaska. DPFUF 1.[2] King Cove is in the Aleutian Island chain and the harbor improvement was to consist

[1] With the consent of the Government, Red Samm assigned its claims to plaintiff, Travelers Casualty and Surety Company of America. See Plaintiff's Amended Complaint ("AC"), paragraph 1.4.

[2] "DPFUF__" refers to a paragraph of Defendant's Proposed Findings of Uncontroverted Facts, which we are filing separately today.

of building a breakwater during one construction season and dredging the harbor behind the breakwater the following construction season. Id.

Red Samm built the breakwater during the first construction season without incident. Red Samm bid the project under the assumption that it would have a subcontractor performing the dredging portion of the project via the "clamshell" method in which a crane mounted upon a barge essentially scoops up material in the dredge area and places it upon another barge for later disposal. DPFUF 23. Sometime between the beginning of work upon the breakwater and the beginning of the dredging, because of a business opportunity to use the dredge spoils for its own future construction needs, Red Samm decided to change dredging methods and use a hydraulic dredge, operated by its own personnel, to conduct dredging operations at King Cove. DPFUF 23.

Red Samm encountered significant difficulties in its attempted use of a hydraulic dredger to dredge in King Cove. AC 4.2. Red Samm ascribes the responsibility for these difficulties to the presence of an inordinate number of "cobbles" (rocks between 3 and 12 inches in diameter) in the area to be dredged, which allegedly clogged Red Samm's hydraulic dredger. Id. Ultimately, Red Samm was unable to complete dredging operations during the second construction season and was forced to hire a subcontractor which used a combination of clamshell and hydraulic dredging to complete the project the next year. AC 4.7.

Travelers alleges that the Corps is responsible for the additional costs which followed from Red Samm's difficulties in hydraulic dredging. Travelers first alleges that the Corps specifications misled Red Samm regarding the type of materials it would encounter (a Type I differing site condition claim). AC 6.2. Travelers also alleges that the Corps engaged in

"misrepresentation" by failing to adequately describe in the solicitation the observations of the geotechnical engineer who conducted the site investigation for the Government. AC 7.4. Additionally, Travelers alleges that the Government failed to disclose its superior knowledge by neither including a particular geotechnical report with its specifications nor informing Red Samm that it utilized language from a particular testing standard when performing its test pit analysis. AC 8.4. Finally, Travelers alleges that the Government wrongfully withheld payment of $213,460 from the contract balance. AC 9.2.

## II. Statement of Facts

For our statement of facts, we respectfully refer the Court to the accompanying Proposed Findings of Uncontroverted Facts.

## LAW AND ARGUMENT

Travelers' claims fail for many reasons based largely upon the same fact: Red Samm did not rely upon the geotechnical data provided by the Corps in the solicitation for the project, which made no affirmative misrepresentations regarding the soil composition in any event. Indeed, Red Samm showed no interest, whatsoever, in this data prior to encountering difficulties in its dredging: it sought no clarification of terms that it readily concedes – and even affirmatively claims – were facially "ambiguous;" it made no requests for geophysical information referenced in the solicitation which included language that Travelers now contends would have provided Red Samm a "warning flag;" and the subsurface investigation which Red Samm relied upon to determine the mode of dredging was one that it conducted itself.

I. Standards for Summary Judgment

The familiar standards of summary judgment need only a brief re-statement here. The procedure of summary judgment is properly regarded not as a disfavored shortcut, but rather as an integral part of the Court rules as a whole, designed to secure a just, speedy and inexpensive determination of every action. Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 (1989)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)); accord Sweats Fashions, Inc. v. Pannill Knitting, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987). "The focus in determining whether summary judgment is appropriate is the lack of disputed material facts. A material fact has been defined as a fact that will make a difference in the outcome of a case." Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied 361 U.S. 843 (1959). Stated differently, only disputes over facts that might affect the outcome of a suit will properly prevent an entry of judgment. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

II. Travelers Cannot Support A Type I Differing Site Conditions Claim

To prevail upon a Type I differing site condition claim, as presented here, a plaintiff must demonstrate that contract provisions misrepresented the conditions to be encountered. See, e.g., H.B. Mac, Inc. v. United States, 153 F.3d 1338, 1342 (Fed. Cir. 1998). In this case, the contract did not mislead Red Samm because the description of cobbles in the Corps test pits could only be considered inaccurate if the test pit data was affirmatively warranted to reflect cobble concentrations throughout the site and if the elastic term, "few," were to be given a specific meaning not consistent with the actual conditions encountered at the site. Moreover, because the term, "few," describing cobble concentrations is patently ambiguous, Red Samm was obligated to make a pre-bid inquiry of its meaning. Red Samm never made any such inquiry because the

meaning of this portion of the contract "wasn't a concern" for Red Samm. DPFUF 23. Moreover, even if "few" were but a "latent" ambiguity, Red Samm would be required to rely upon its interpretation of the contract prior to the bid in order to collect damages and, at the time it bid upon the project, Red Samm intended to utilize clamshell dredging, which would not have encountered the same problems as Red Samm's later methods. DPFUF 23; AC 4.2. Finally, Red Samm is charged with knowledge of information referred to in the contract documents. The contract documents referred to a geophysical report which plaintiff acknowledges "would have raised a flag," warning it to expect more cobbles than it planned for. DPFUF 19-20.

## A. The Solicitation's Terms Do Not Support A Type I Differing Site Condition Claim

Inter alia, a Type I differing site conditions claim requires an affirmative misrepresentation of the site conditions by the specifications and a reliance upon that misrepresentation by the contractor. Neither was present here.

### 1. To Support A Type I Differing Site Condition, The Specifications Must Make Reasonably Plain Indications Of The Conditions To Be Encountered

In order to recover for a Type I differing site condition, a contractor must prove that (1) the contract documents affirmatively represented certain conditions, (2) plaintiff reasonably interpreted the contract, (3) plaintiff reasonably relied upon representations of subsurface conditions, (4) actual subsurface conditions differed materially from those represented in the contract, (5) the actual conditions were not reasonably foreseeable, and (6) the costs claimed are solely the result of the differing conditions. Weeks Dredging & Contr., Inc. v. United States, 13 Cl. Ct. 193, 218 (1987), aff'd, 861 F.2d 728 (Fed. Cir. 1988); H.B. Mac, 153 F.3d at 1342. The "affirmative representation" of conditions requires that the contract contain "reasonably plain or

positive indications" that conditions would be more favorable than those actually encountered. P.J. Maffei Bldg. Wrecking Corp. v. United States, 732 F.2d 913, 916 (Fed. Cir. 1984). When a specification does not affirmatively represent that only certain materials will be found, it does not support a Type I differing site condition. Comtrol, Inc. v. United States, 294 F.3d 1357, 1363 (Fed. Cir. 2002).

2. The Contract Made No Representation Regarding The Percentage Of Cobbles Throughout The Dredge Area

Travelers can point to no representation in the solicitation regarding the amount of cobbles to be encountered. Instead, under "Character of Materials" the solicitation merely notes that "Exploration Logs for the area to be dredged and excavated are enclosed in Appendix A." DPFUF 3. Nothing in those logs provides that the cobble concentrations to be found therein are to be replicated throughout the project – indeed, they could not because the five test pits generally varied upon their descriptions of cobbles and their locations. See DPFUF 5-9. Indeed, Red Samm's sediment control plan made evident that the information provided by the Corps test pit logs did not contain subsurface information regarding the percentage of silt, one of the components of soil.[3] DPFUF 25. As in Comtrol, the solicitation "made no specific representation as to the type of soil to be encountered," thus no Type I differing site condition can be sustained. 294 F.3d at 1363.

Even if the solicitation had stated that the soil throughout the project would be consistent with the test pit logs, the description of cobble percentages in those logs used what Red Samm

[3] We do not allege that this document, alone, is dispositive of representations of cobbles, but it makes evident that Red Samm understood that the Corps was not affirmatively representing the percentages of soil components in its test pit logs.

considered to be an "ambiguous" term, "few." We will discuss the ambiguity of "few" in greater detail in Section II. D. 2, below, regarding patent ambiguity, but it is enough to note here that plaintiff's expert, Mr. Brown, conceded that he did not know what percentage of cobbles was conveyed by the solicitation. DPFUF 15 (not clear whether it was "two percent or 20 percent"). Thus, recovery by Travelers is precluded because an ambiguous description cannot under any circumstances be considered a "reasonably plain or positive indication" of the conditions. See P.J. Maffei, 732 F.2d at 916.

B. Travelers Cannot Recover Because Red Samm's Bid Was Not Based Upon The Corps Test Pit Logs

1. A Contractor May Not Recover Upon A Differing Site Condition Claim Unless It Actually Relied Upon The Allegedly Deficient Specifications When Preparing Its Bid

As the Court of Appeals for the Federal Circuit noted, "[i]t is well-established that a crucial element of . . . a differing site conditions claim . . . is reliance." Comtrol, 294 F.3d at 1363. This reliance must be manifested prior to the contractor's bid. Weeks Dredging, 13 Cl. Ct. at 218 (1987). A similar pre-bid reliance requirement applies to those circumstances in which the allegation is that there is a latent ambiguity in the specifications. E.g., P.R. Burke Corp. v. United States, 277 F.3d. 1346, 1355 n.3 (Fed. Cir. 2002).

2. Travelers Cannot Recover Because Red Samm Did Not Rely Upon The CorpsTest Pit Logs

The Corps test pits had no impact upon any decision made pre or post bid by Red Samm. In justifying its failure to inquire regarding the meaning of terms in the test pit logs, Red Samm explained that the terms were unimportant to it because it intended to us a subcontractor which would use "clamshell" dredging. DPFUF 23. When Red Samm contemplated changing its mode

of dredging, it conducted its own exploration, rather than seek clarification of the Corps test pits. DPFUF 26. This comprehensive exploration included the laboratory analysis and grading, by Red Samm's subcontractor, of four test pits and thousands of pounds of materials, including off-shore materials – a level of thoroughness not performed by the Corps as evident in the contract documents. Id. Red Samm sent only its own test results to its dredge manufacturer (DeGroot) to determine if its hydraulic dredge would be suitable for the dredging at King Cove. DPFUF 26. Despite the facts that cobbles were visibly present at the area to be dredged, DPFUF 28, and the Corps test pits plainly noted the existence of cobbles, DPFUF 5-9, Red Samm's data informed DeGroot of not a single cobble. DPFUF 25. Based only upon the information provided by Red Samm, DeGroot told Red Samm that its dredge would be appropriate at King Cove. DPFUF 27.

As discussed above, although the law requires a party to demonstrate reliance upon the site description, see Travelers cannot demonstrate that Red Samm relied upon the Corps test pit logs at any point. To the contrary, Red Samm completely ignored them when providing information to its dredge manufacturer. DPFUF 26. Without reliance by Red Samm, Travelers cannot recover upon this differing site condition claim. Comtrol, 294 F.3d at 1363-64; H.B. Mac, 153 F.3d at 1345. Similar results apply if "few" is considered a latent ambiguity, which would require pre-bid reliance by Red Samm to make Travelers eligible for recovery. P.R. Burke, 277 F.3d at 1365, n.3.

C. <u>Travelers Cannot Recover Because Red Samm Did Not Consult Documents, Referenced In The Solicitation, Which It Admits Would Have Warned It Of The Site Conditions</u>

1. <u>A Contractor May Not Recover Upon A Differing Site Conditions Claim If The Contract References Documents Which Would Have Placed The Contractor Upn Notice Of The Site Conditions</u>

When a solicitation refers to the existence of additional documents in the custody of the Government describing site conditions, the contractor is charged with knowledge of the information in those documents. <u>Randa/Madison Joint Venture III v. Dahlberg</u>, 239 F.3d 1264, 1270-72 (Fed. Cir. 2001); <u>see</u> <u>also</u> <u>A.S. McGaughan Company, Inc. v. United States</u>, 24 Cl.Ct. 659, 666 - 667 (1991). If those additional documents place the contractor upon notice of site conditions, then a differing site conditions claim cannot be maintained. <u>Randa/Madison</u>, 293 F.3d at 1274-76.

2. <u>Because The Golder Report, Referenced In The Solicitation, Would Have Put Red Samm Upon Additional Notice Of The Site Conditions, Travelers Cannot Recover</u>

The solicitation provided, in part, that "Geophysical data for this area can be obtained from the Corps of Engineers, Geotechnical Branch - Soils and Geology Section, Alaska District." DPFUF 3. Had an inquiry been made by a bidder for this geophysical data, the bidder would have been provided with a study conducted by Golder & Associates ("the Golder Report"). DPFUF 17. The Golder Report includes the following passage:

> This [seismic] signature is typical of coarse grained sediments deposited in a high energy environment. This interpretation is consistent with the test pit data from the southwest end of the site, which show mostly gravel with some cobbles and boulders in the upper 10 ft. The seismic signature for these upper sediments is uniform and was observed in the seismic records across the site, suggesting that coarse-grained sediments, consisting of mostly

> sand and gravel with some cobbles and boulders exist throughout
> the site.

DPFUF 14. According to Travelers' expert, Mr. Brown, the language in that passage, "mostly of sand and gravel, some cobbles and boulder throughout the site," would "have raised a flag"to the contractor regarding cobble concentrations. DPFUF 19, 20. According to Mr. Brown, even the use of the word, "some," (as in the Golder report) would have raised such warning flags. DPFUF 19. Thus, at the very least, reviewing this document, referred to in the contract, would have undermined any belief that the solicitation made any "affirmative representations" regarding the cobble amounts. E.g., P.J. Maffei, 732 F.2d at 916.

D. Travelers Cannot Recover Because Red Samm Did Not Seek Clarification Of A Patent Ambiguity

1. A Contractor Which Does Not Seek Clarification Of A Patent Ambiguity Will Have The Contract Construed Against It

It is well-settled that, when contract document include a patent ambiguity, the contractor is obligated to seek resolution of the ambiguity from the Government prior to its bid. Comtrol, 294 F.3d at1365 (citing Hunt Constr. Grp., Inc. v. United States, 281 F.3d 1369, 1375 (Fed. Cir. 2002) and Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 998 (Fed. Cir. 1996)); P.R. Burke, 277 F.3d. at 1355 ("An ambiguity on the face of a contract – a "patent" ambiguity – triggers a duty on behalf of a public contractor to inquire about that ambiguity before it even bids on a contract.") (citations omitted). Absent such an inquiry by the contractor, the contract is construed against it. P.R. Burke, 277 F.3d at 1355; Interwest Construction v. Brown, 29 F.3d 611, 615-16 (Fed. Cir. 1994) ("Because Interwest did not seek clarification of the performance requirements, it cannot now secure an equitable adjustment arising from the alleged ambiguity.").

2. The Term, "Few," In The Contract Specifications Is Patently Ambiguous

An ambiguity is "patent" if it is "glaring, substantial, or patently obvious." Comtrol, 294 F.3d at 1365 (citations omitted). Common sense tells us that the word, "few," describing the abundance of cobbles in a test pit is obviously indeterminate.[4] Authorities agree. See Blacks Law Dictionary, 5th Ed (1979) (Few: "a relative term with great elasticity of meaning."). Moreover, plaintiff agrees. Both of its geotechnical experts found "few," in the context of the specifications to be ambiguous. DPFUF 15, 16. As Mr. Brown elaborated, describing his recourse to a dictionary which, itself, did not provide quantification of few, "the term was used, "few," to describe the amount of cobbles in the soils exploration on this job. And that didn't tell me if it was one cobble or ten or two percent or 20 percent, which is what I would have needed to know." DPFUF 15.[5]

3. Travelers Cannot Recover Because Red Samm Made No Inquiry

There is no dispute that Red Samm made no inquiry – pre-bid or otherwise – about the meaning of "few" in the test pit logs, because "it wasn't a concern." DPFUF 23. Accordingly, the ambiguity in the quantity of cobbles reflected in these logs must be construed against Red Samm/Travelers. P.R. Burke, 277 F.3d at 1355; Interwest, 29 F.3d at 615-16.

---

[4] Travelers may suggest that "few" is quantifiable in everyday usage. A simple example reminds us otherwise: the United States Marine Corps has long characterized itself as, "The few, the proud." Even before the current war, there were over 170,000 Marines on active duty. See U.S. Dept. Of Defense News Release, April 5, 2000.

[5] Adding further power to the notion that "few" could refer to a relatively large number is the fact that ASTM 2488 uses the adjective "few" to describe concentrations of sands and gravels of five to ten percent by weight. DPFUF 14. Although this meaning of "few" is not necessarily applied to cobble concentrations, it provides more evidence that "few" is a relative term and can certainly be considered to encompass a broad range.

## III. Travelers Cannot Support Its Misrepresentation Claim

Travelers' misrepresentation claim appears to be primarily a rephrasing of its Type I differing site conditions claim, with some additions. See AC 7.1-7.5. The additional alleged misrepresentations appear to be premised upon the Government's alleged failure to follow certain geotechnical testing procedures, see AC 7.4, despite the fact that one of the alleged misrepresentations is that the Government did not inform potential bidders that it was following said procedures. AC 7.2. In any event, because the Government did not misrepresent either the site conditions at King Cove or its site investigation and because Red Samm did not rely upon any such representations, Travelers cannot maintain this cause of action.

### A. A Cause Of Action For Misrepresentation Requires Both An Erroneous Representation Of Fact And Reliance Upon The Misrepresentation

In order to prevail in a cause of action of misrepresentation, "the contractor must show that the government made an erroneous representation of a material fact that the contractor honestly and reasonably relied on to the contractor's detriment." T. Brown Constructors, Inc. v. Pena, 132 F.3d 724, 729 (Fed. Cir. 1997), citing Roseburg Lumber Co. v. Madigan, 978 F.2d 660, 667 (Fed. Cir. 1992).

### B. The Corps Made No Erroneous Representation

Travelers' complaint appears to allege that the test pits logs were misleading because they did not accurately convey or describe what the Government's geotechnical engineer observed. AC 7.2. These inaccuracies were allegedly manifested in the Government's utilizing procedures in ASTM 2488, but not disclosing that fact to bidders. Id. Travelers further alleges that it was an act of misrepresentation for the Government to utilize AST 2488 procedures, but to

perform them incorrectly. Id. These allegations are contradictory and not borne out by the test pit logs.

In Section II C., above, we demonstrated that the test pit logs were not misleading because they did not affirmatively reflect the subsurface conditions to be found throughout the dredge site. The descriptions in the logs are short and use the ambiguous term, "few," and otherwise make non-quantitative descriptions of the cobbles. DPFUF 5-9. Under these circumstances, the pit logs cannot be considered "erroneous" and Travelers provides no specific allegation of any incorrect and misleading representation in the logs. Of course, the existence of patent ambiguity in the test pit logs would require inquiry by Red Samm, which would have cleared up any confused understanding of the meaning of the test pit logs. P.R. Burke, 277 F.3d at 1355; Interwest, 29 F.3d at 615-16. So, too, would have Red Samm's recourse to the Golder report.

To the extent that Travelers claims that the use by the Corps of the test procedures in ASTM 2488 constituted a misrepresentation, there is even less support for the claim: nowhere in the contract does the Corps purport to use (or not use) any particular testing procedures. Thus, any Corps use of ASTM 2488 procedures is in no way related to any "erroneous representation" in the contract documents.

The alleged failure of the Corps to follow ASTM 2488 testing procedures is similarly misplaced: nothing in the contract states that such procedures were followed, thus there is no erroneous representation made therein. Moreover, even the most cursory perusal of the test pit logs by Red Samm would have alerted it that: the logs did not "clearly state" that ASTM 2488 procedures were used, see AC 7.4a; that the logs did not provide the dimension of the largest

particle, see AC 7.4b; that the logs did not include a specific numerical percentage of cobbles,[6] see AC 7.4c; and that the logs did not estimate the percentage of "gravel, sands, and fines by weight." See AC 7.4d. Thus, these alleged failures to follow the ASTM cannot be considered to be erroneous representations and there is no support for Travelers' misrepresentation claim.

C. Red Samm Did Not Rely Upon The Representations In The Test Pit Logs

As we demonstrated earlier in Section II B of this brief, Red Samm did not rely upon the data in the test pit logs, but, instead, relied upon its own exploration to determine the character of the soils. Without such reliance, there can be no recovery for misrepresentation. T. Brown Constructors, 132 F.3d at 729.

IV. Travelers' Superior Knowledge Claim Should Be Dismissed

Travelers cannot prevail in its superior knowledge claim because the information allegedly withheld by the Government would have made no difference to Red Samm's decision-making and the Government had no reason to believe that site condition information was not readily available to Red Samm, which conducted its own site survey.

A. To Prevail In A Superior Knowledge Claim Travelers Must Prove That Red Samm Was Misled By The Corps' Withholding Of Information Which The Corps Would Have No Reason To Believe That Red Samm Could Find For Itself

The elements of a superior knowledge claim are well-established:

> (1) a contractor undertakes to perform without vital knowledge of a fact that affects performance costs or duration, (2) the government was aware that the contractor had no reason to obtain such information, (3) any contract specification supplied misled

[6] We assume that Travelers' allegation here is that the ASTM requires a numerical quantification of cobble percentages as opposed to the use of an adjective (e.g., "few") which conveys information regarding percentages. Although we do not necessarily agree that the ASTM requires this, we accept it for the sake of argument here.

> the contractor or did not put it on notice to inquire, and (4) the government failed to provide the relevant information.

American Ship Building Company v. United States, 228 Ct. Cl. 220, 225, 654 F.2d 75, 79 (1981); see also H.N. Bailey & Associates v. United States, 196 Ct. Cl. 166, 177-78, 449 F.2d 376, 382-83 (1971). The second element, put another way, is that "it is unreasonable to expect the contractor to obtain that vital information from any other accessible source." H.N. Bailey, 196 Ct. Cl. at 177-78, 449 F.2d at 382-83.

B. The Corps Withheld No Vital Fact From Red Samm

Travelers' complaint alleges that the superior knowledge allegedly withheld from Red Samm were the facts that the Corps used ASTM methods to test the test pit and the contents of a two-page geotechnical report (found appended to plaintiff's amended complaint) written by the Corps. AC 8.2, 8.3. Neither constitutes a withholding of vital information.

First, we note that Travelers alleged earlier in its complaint that the Corps did not comply with ASTM 2488. See AC 7.4a-7.4d. For Travelers to allege that the Corps' use of ASTM 2488 was withheld from Red Samm at the same time that it alleges that the Corps did not follow ASTM 2488 is a non sequitur. As discussed in Section III. B., above, Travelers' complaint makes evident that the Corps did not use all of the procedures in ASTM 2488, thus Travelers cannot claim here that not making the false assertion that it used the procedures in ASTM 2488 should constitute a withholding of vital information.

Regarding the withholding of the geotechnical report, the report constitutes little more than a summary of the results of the test pit logs, which were provided to Red Samm and all other bidders. See AC, Exhibit 1. In terms of its description of the subsurface conditions, the report provides, in total, that:

> b. Subsurface: The test pits indicate the basin area to be underlain primarily by gravel containing some cobbles and boulders (photos 2 and 3). Where encountered, the surfacial silty sand was found to extend to depths less than 1-1/2 feet (photo 4). The soils were easy to excavate with the backhoe, but caving of the sidewalls limited the excavation depth to about 10 feet. The exception to these conditions was the bedrock.

AC Exhibit 1, paragraph 4.b. The test pit logs contained in the solicitation stated the same thing, in more detail, except that they did not use the word "some" to describe cobbles and boulders. See DPFUF 4-9. Although we do not necessarily agree that inclusion of the word "some" in this text was a material difference, the Golder report included that modifier to describe the cobbles, see DPFUF 18, and, as demonstrated in Section II D., above, Red Samm was upon constructive notice of the contents of the Golder report.

The only other part of the geotechnical report which mentions cobbles is the conclusion, which states that, "[t]he gravel soils containing cobbles and boulders should not present major problems, provided that the equipment used to dredge these materials is commensurate with those conditions." AC Exhibit 1, paragraph 5a. This conclusion cuts deeply against Travelers' claim of superior knowledge for it states that the Corps did not believe the soils or the cobbles within them to present a major problem. The statement that the Corps expected the contractor to use appropriate equipment for the conditions is surely not superior knowledge – no contractor would be expected to use equipment not commensurate with the conditions. See American Shipbuilding, 228 Ct. Cl. at 226, 654 F.2d at 79 ("reasonable for the government to assume that the contractor is the best judge of its competency"); DPFUF 2 (contractor warranted that it was familiar with the character of the equipment necessary for the project). Thus the geotechnical report cannot be a vital fact withheld from Red Samm.

We also note, of course, that the existence of the patent ambiguity in the test pit logs should have compelled inquiry upon the part of Red Samm, which would have eliminated any claim of superior knowledge.

C. The Government Had Reason To Believe That Red Samm Could Obtain The Information It Possessed

The knowledge gained by Red Samm's access to the dredge area and its own geotechnical investigations exceeded the information known by the Corps. Red Samm was at the site for a full season before it made the decision to utilize the hydraulic dredger. DPFUF 26. During that time, cobbles and boulders were visibly present at the surface of the dredge area. DPFUF 28. Moreover, Red Samm dug four test pits (compared to the five dug by the Corps) and sent the material for laboratory analysis and gradation, which was not accomplished by the Corps, see DPFUF 4, for its test pits. DPFUF 26. Finally, Red Samm used its crane to excavate 50 cubic yards of material from the off-shore dredge area and sent that material for sieve analysis. Id. The Corps never performed such offshore analysis. Under these circumstances, where (with the exception of the publicly available Golder report) Red Samm's investigation was more comprehensive in every way than that of the Corps, there is no legal or factual basis for Travelers to allege that "it [was] unreasonable to expect the contractor to obtain that vital information from any other accessible source." H.N. Bailey, 196 Ct. Cl. at 177-78, 449 F.2d at 382-83.

Indeed, the facts here are more favorable to the Government than those presented in L.G. Everist v. United States, 231 Ct. Cl. 1013 (1982). In Everist, both the Government and the contractor performed their own field investigations of a quarry site, but came to somewhat different conclusions. 231 Ct.Cl. 1015-16. Under those circumstances, where plaintiff had equal

access to information as the Government, the Court of Claims found that plaintiff had no basis for a superior knowledge claim. 231 Ct.Cl. 1018-19. Likewise, the Government cannot be said here to have had reason to believe that, with its modest investigation (provided to Red Samm in the bid documents and ignored by it), it possessed knowledge that Red Samm could not obtain (Red Samm possessing more data than the Corps). As in Everist, dismissal of Red Samm's claim is appropriate.

## V. Travelers Is Owed Nothing Upon Its Contract Balance Claim

Finally, we note that Red Samm's claim that it is owed $213,460.00 upon its contract ignores the fact that it was assessed liquidated damages for its failure to complete the contract at the time of contract completion, November 8, 2000. See DPFUF 29. The contracting officer only withheld $213,460.00 from Red Samm, DPFUF 32, but was entitled to withhold $506,430.00 according to the plain language of the liquidated damages clause. DPFUF 33. Thus, the contracting officer was, if anything, generous to Red Samm in the amount of almost $300,000 and Travelers has no basis for alleging that it was underpaid what it was due upon the contract.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court grant summary judgment in its favor, and enter an order dismissing the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ James M. Kinsella
JAMES M. KINSELLA
Deputy Director

s/ J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 305-7586
Fax (202) 514-7969
Attorneys for Defendant

March 27, 2006