IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation, Plaintiff, | ) | |
| v. | ) | No. 04-487C (Judge Block) |
| THE UNITED STATES, Defendant. | ) | |

**DEFENDANT'S PROPOSED FINDING OF UNCONTROVERTED FACTS**

Pursuant to Rule 56(d)(1) of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully submits the following proposed findings of uncontroverted fact in support of its Motion for Summary Judgment.

1. In 1998, the United States Army Corps of Engineers ("the Corps") solicited proposals for the King Cove Harbor Improvements Project In King Cove, Alaska ("the project"). AC 3.1.[1] The project consisted of constructing a breakwater and subsequently dredging an entrance channel and mooring basin at the pre-existing harbor at King Cove, which is a remote site located in the Aleutian Island chain. Id.

2. The solicitation for the project ("the solicitation") included the standard Federal Acquisition Regulation ("FAR") Site Investigations Clause, which provided, in relevant part, that:

> The Contractor acknowledges that it has taken steps reasonably necessary to ascertain the nature and location of the work, and that it has investigated and satisfied itself of the conditions which can affect the work or its cost, including but not limited to . . . (5) the

[1]"AC __" refers to a paragraph of Plaintiff's First Amended Complaint.

> character of equipment and facilities needed preliminary to and during work performance. The Contractor also acknowledges that it has satisfied itself as to the character, quality, and quantity of surface and subsurface materials to be encountered insofar as this information is reasonably ascertainable from an inspection of the site, including all exploratory work done by the Government. . .

App. 21.[2]

3. The solicitation also included a description of the materials to be dredged. Section 02222, Dredging, Excavation, And Disposal provided:

> 1.2 Character of Materials.
>
> Exploration Logs for the area to be dredged and excavated are enclosed in Appendix A. Incidental sunken logs, boulders, rock, snags and other miscellaneous debris from harbor and fishing operations should be expected. Geophysical data for this area can be obtained from the Corps of Engineers, Geotechnical Branch - Soils and Geology Section, Alaska District.

App. 2.

4. The exploration logs referenced in the solicitation are reproduced in their entirety at pages 5 - 20 of the appendix.

5. The exploration log for Test Pit 1, dug to ten feet deep with a backhoe, indicated “Silty Sand” for the first foot of excavation and “Gravel w/ few Cobbles & Boulders” for the remaining nine feet. App. 6.

6. The exploration log for Test Pit 2, dug to nine and a half feet deep with a backhoe, indicated “Gravel w/ Cobbles & Boulders” throughout. App. 7.

7. The exploration log for Test Pit 3, dug to five feet deep with a backhoe, indicated “Gravel and Cobbles” for the first foot of excavation and “Weathered Bedrock” for the

[2] “App. __” refers to a page of the appendix attached to this filing.

remaining four feet before it indicated "Difficulty of Digging - Refusal." App. 8.

8. The exploration log for Test Pit 4, dug to nine feet deep with a backhoe, indicated "Gravel & Cobbles" for the first foot of excavation and "Gravel" for the remaining eight feet. App. 9.

9. The exploration log for Test Pit 5, dug to ten feet deep with a backhoe, indicated "Silty Sand" for the first foot of excavation and "Gravel w/ few Cobbles" for the remaining nine feet. App. 10.

10. The American Society for Testing and Materials ("ASTM") promulgates standards for soil investigation and testing generally recognized as an industry standard. App. 27-28.

11. ASTM 2488 defines a "cobble" as a particle of rock that will pass a 12 inch square opening, but be retained by a three inch sieve. App. 34 (see Note 2).

12. ASTM 2488 defines the term "boulder," as a particle of rock that will not pass a 12 inch square opening. Id.

13. ASTM 2488 directs that an investigator should "[e]stimate and note the percentages of cobbles and the percentages of boulders." App. 39 (see paragraph 12.2).

14. Note 15 to ASTM 2488 provides that:

> If desired, the percentages of gravel, sand, and fines may be stated in terms indicating a range of percentages as follows:
>
> \- - -
>
> Few - - 5 to 10 %.
>
> \- - -
>
> Some - - 30 to 45 %

App. 41. ASTM 2488 provides no other definition of "few" App. 34-44.

15. Mr. Roger Brown, plaintiff's expert, who "look[ed] at things as a contractor," (App. 26), described his recourse to the Webster's Dictionary to define "few:"

> . . . the term was used, "few," to describe the amount of cobbles in the soils exploration on this job. And that didn't tell me if it was one cobble or ten or two percent or 20 percent, which is what I would have needed to know.
>
> Q: Okay.
>
> A: And so it's a very ambiguous term.
>
> - - -
>
> A: And, therefore, I'm trying to think of what the author meant. It's an ambiguous term.

App. 29-30. See also App. 31 ("few" in the contract documents is "ambiguous").

16. Mr. Peter Douglass, plaintiff's geotechnical expert, referred to "the ambiguous qualitative term 'few,'" when discussing the test pits in his expert report. App. 46. He later confirmed during his deposition that he believed the term, "few," to be ambiguous. App. 50.

17. As part of its site investigation, the Corps procured a seismic survey of the King Cove area in order to determine the depth and location of bedrock. App. 52-53. This survey was conducted by Golder and Associates and resulted in an 11-page report with appendices ("the Golder Report"), kept by the Geotechnical Branch - Soils and Technology Section, Alaska District of the Corps. App. 56. If a bidder upon the project had requested additional information from the Corps, the Golder Report would have been provided. Id.

18. The Golder Report states, in relevant part, that:

> This [seismic] signature is typical of coarse grained sediments deposited in a high energy environment. This interpretation is consistent with the test pit data from the southwest end of the site, which show mostly gravel with some cobbles and boulders in the upper 10 ft. The seismic signature for these upper sediments is uniform and was observed in the seismic records across the site, suggesting that coarse-grained sediments, consisting of mostly sand and gravel with some cobbles and boulders exist throughout the site.

App. 54.

19. Plaintiff's expert, Mr. Brown, states that the use of the word "some" by the Corps to describe the presence of boulders and cobbles at the project, "would have raised a flag, raised some concerns." App. 32-33.

20. When asked, "If the information had stated, quote, mostly of sand and gravel, some cobbles and boulders throughout the site, would that have raised a flag?" Mr. Brown replied, "That would have raised a flag." App. 33.

21. Red Samm Construction, Inc. ("Red Samm") made no inquiry, before or after its bid upon the project, for geophysical data from the Corps, referenced in the solicitation. App. 62-63.

22. At no time did Red Samm inquire of the Corps what was meant by the term, "few," in the test pit logs. App. 68.

23. Mr. David Heeter, who performed the estimate for Red Samm upon the project (App. 59), stated that he did not seek clarification of the meaning of the word, "few," because, "at that point [prior to the bid] it wasn't a concern." App. 69. He further explained that it was primarily the subcontractor's concern. Id. Red Samm planned to have its subcontractor utilize "clamshell" dredging. App. 60-61. "Clamshell dredging" is the use of an excavator or crane with a "bucket"

to mechanically gather material to be dredged from the dredge area and place it upon a barge for later disposal. App. 83. Sometime after Red Samm commenced work upon the breakwater, the City of King Cove offered Red Samm the opportunity to keep a portion of the dredge spoils for its own use. App. 72. At that point Red Samm first considered utilizing "hydraulic" or "suction" dredging. Id.

24. At the time of bidding, cobbles and other large rocks were visibly present during low tide across the surface of the area to be dredged. App. 64-66.

25. Red Samm's sediment control plan, drafted in April 1999, notes that "no subsurface information is given in the specifications to determine the amount of silt the basin contains." App. 67; 84.

26. Red Samm performed its own geotechnical survey in 1999, from which it determined the nature of the materials to be dredged. App. 65-66. Red Samm determined that "the best thing to do" to determine the value of cobble concentrations was to "do our own exploration." App. 68. This investigation included the digging four additional on-shore test pits by Red Samm personnel; excavating 50 cubic yards of material in the off-shore area to be dredged by its own on-site clamshell excavator; and shipping the materials from the test puts and off-shore excavation to a subcontractor's laboratory for gradation analysis. App. 47; 71. In January 2000, Red Samm sent the information from its own testing of materials in the dredge area to the representatives of DeGroot company to determine the feasibility of using the DeGroot suction dredge for the project instead of clamshell dredging. App. 73-79. The data Red Samm chose to forward to DeGroot reflected zero cobbles. App. 80. The information sent to DeGroot did not include any data from the Corps. App. 74; 80-81.

27. Based upon the information provided by Red Samm, DeGroot told Red Samm officials that its dredge would have no problem with the materials to be encountered at King Cove. App. 78-79.

28. The contract included a liquidated damages clause which provided that:

> If the Contractor fails to complete the work within the time specified in the contract, or any extension, the Contractor shall pay to the Government, as liquidated damages, the sum of $1,655 for each day of the delay.

App. 23.

29. The completion date specified in the contract was November 8, 2000. App. 89.

30. The contract work was completed on September 10, 2001. App. 48.

31. As a result of Red Samm's failure to meet the completion date and the consequent liquidated damages, the contracting officer withheld payment upon the contract. App. 89.

32. The Corps withheld payment of $213,460.00 upon the contract. AC 9.2.

33. The 306 day difference between November 8, 2000 and September 10, 2001, multiplied by the liquidated damages rate of $1,655 per day produces liquidated damages in the amount of $506,430.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ James M. Kinsella
JAMES M. KINSELLA
Deputy Director

s/ J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 305-7586
Fax (202) 514-7969
Attorneys for Defendant

March 27, 2006

# INDEX TO APPENDIX

Excerpts from contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Excerpts from deposition of Roger L. Brown . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

ASTM 2488 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Excerpts from expert report of Peter M. Douglass . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Excerpts from deposition of Peter M. Douglass . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Excerpts from Golder & Associates Geophysical Report . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Declaration by Jerome Raychel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Excerpts from deposition of David Heeter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Excerpts from deposition of Deborah K. Reidell . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

Red Samm Sediment Control Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

Red Samm facsimile to Degroot-Nijkerk . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88

Serial Letter 048A from contracting officer to Red Samm . . . . . . . . . . . . . . . . . . . . . . . . . . 89