(d) If a stop-work order is not canceled and the work covered by the order is terminated for default, the Contracting Officer shall allow, by equitable adjustment or otherwise, reasonable costs resulting from the stop-work order.

(e) The Government's rights to terminate this contract at any time are not affected by action taken under this clause.

(f) If, as the result of the Contractor's intentional or negligent misstatement, misrepresentation, or miscertification, a protest related to this contract is sustained, and the Government pays costs, as provided in FAR 33.102(b)(2) or 33.104(h)(1), the Government may require the Contractor to reimburse the Government the amount of such costs. In addition to any other remedy available, and pursuant to the requirements of Subpart 32.6, the Government may collect this debt by offsetting the amount against any payment due the Contractor under any contract between the Contractor and the Government.

(End of clause)

I.63 52.236-2 DIFFERING SITE CONDITIONS (APR 1984)

(a) The Contractor shall promptly, and before the conditions are disturbed, give a written notice to the Contracting Officer of (1) subsurface or latent physical conditions at the site which differ materially from those indicated in this contract, or (2) unknown physical conditions at the site, of an unusual nature, which differ materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract.

(b) The Contracting Officer shall investigate the site conditions promptly after receiving the notice. If the conditions do materially so differ and cause an increase or decrease in the Contractor's cost of, or the time required for, performing any part of the work under this contract, whether or not changed as a result of the conditions, an equitable adjustment shall be made under this clause and the contract modified in writing accordingly.

(c) No request by the Contractor for an equitable adjustment to the contract under this clause shall be allowed, unless the Contractor has given the written notice required; provided, that the time prescribed in (a) above for giving written notice may be extended by the Contracting Officer.

(d) No request by the Contractor for an equitable adjustment to the contract for differing site conditions shall be allowed if made after final payment under this contract.

(End of clause)

I.64 52.236-3 SITE INVESTIGATION AND CONDITIONS AFFECTING THE WORK (APR 1984)

(a) The Contractor acknowledges that it has taken steps reasonably necessary to ascertain the nature and location of the work, and that it has investigated and satisfied itself as to the general and local conditions which can affect the work or its cost, including but not limited to (1) conditions bearing upon transportation, disposal, handling, and storage of materials; (2) the availability of labor, water, electric power, and roads; (3) uncertainties of weather, river stages, tides, or similar physical conditions at the site; (4) the conformation and conditions of the ground; and (5) the character of equipment and facilities needed preliminary to and during work performance. The Contractor also acknowledges that it has satisfied itself as to the character, quality, and quantity of surface and subsurface materials or obstacles to be encountered insofar as this information is reasonably ascertainable from an inspection of the site, including all exploratory work done by the Government, as well as from the drawings and specifications made a part of this contract. Any failure of the Contractor to take the actions described and acknowledged in this paragraph will not relieve the Contractor from responsibility for estimating properly the difficulty and cost of successfully performing the work, or for proceeding to successfully perform the work without additional expense to the Government.

(b) The Government assumes no responsibility for any conclusions or interpretations made by the Contractor based on the information made available by the Government. Nor does the Government assume responsibility for any understanding reached or representation made concerning conditions which can affect the work by any of its officers or agents before the execution of this contract, unless that understanding or representation is expressly stated in this contract.

(End of clause)

I.65 52.236-5 MATERIAL AND WORKMANSHIP (APR 1984)

(a) All equipment, material, and articles incorporated into the work covered by this contract shall be new and of the most suitable grade for the purpose intended, unless otherwise specifically provided in this contract. References in the specifications to equipment, material, articles, or patented processes by trade name, make, or catalog number, shall be regarded as establishing a standard of quality and shall not be construed as limiting competition. The Contractor may, at its option, use any equipment, material, article, or process that, in the judgment of the Contracting Officer, is equal to that named in the specifications, unless otherwise specifically provided in this contract.

(b) The Contractor shall obtain the Contracting Officer's approval of the machinery and mechanical and other equipment to be incorporated into the work. When requesting approval, the Contractor shall furnish to the Contracting Officer the name of the manufacturer, the model number, and other information concerning the performance, capacity, nature, and rating of the machinery and mechanical and other equipment. When required by this contract or by the Contracting Officer, the Contractor shall also obtain the Contracting Officer's approval of the material or articles which the Contractor contemplates incorporating into the work. When requesting approval, the Contractor shall provide full information concerning the material or articles. When directed to do so, the Contractor shall submit samples for approval at the Contractor's expense, with all shipping charges prepaid. Machinery, equipment, material, and articles that do not have the required approval shall be installed or used at the risk of subsequent rejection.

(c) All work under this contract shall be performed in a skillful and workmanlike manner. The Contracting Officer may require, in writing, that the Contractor remove from the work any employee the Contracting Officer deems incompetent, careless, or otherwise objectionable.

(End of clause)

(R 7-602.9 1964 JUN)

I.66 52.236-6 SUPERINTENDENCE BY THE CONTRACTOR (APR 1984)

At all times during performance of this contract and until the work is completed and accepted, the Contractor shall directly superintend the work or assign and have on the work site a competent superintendent who is satisfactory to the Contracting Officer and has authority to act for the Contractor.

(End of clause)

I.67 52.236-7 PERMITS AND RESPONSIBILITIES (NOV 1991)

The Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work. The Contractor shall also be responsible for all damages to persons or property that occur as a result of the Contractor's fault or negligence. The Contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under the contract.

(End of clause)

SPECIAL CONTRACT REQUIREMENTS

AM #1...

**SCR-1 COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK** (APR 1984) (FAR 52.212-3): The Contractor will be required to (a) commence work under this contract within 10 calendar days after the date the Contractor receives the Notice to Proceed (NTP), (b) prosecute the work diligently, and (c) complete the entire work, including any options awarded, ready for use not later than 665 calendar days after the date the Contractor receives the original Notice to Proceed with work on the project. The time stated for completion shall include final cleanup of the premises.

...AM #1

**SCR-2** NOT USED

**SCR-3 LIQUIDATED DAMAGES-CONSTRUCTION** (APR 1984) (FAR 52.212-5):

AM #1...

(a) If the Contractor fails to complete the work within the time specified in the contract, or any extension, the Contractor shall pay to the Government as liquidated damages, the sum of $1,655.00 for each day of delay.

...AM #1

(b) If the Government terminates the Contractor's right to proceed, the resulting damage will consist of liquidated damages until such reasonable time as may be required for final completion of the work together with any increased costs occasioned the Government in completing the work.

(c) If the Government does not terminate the Contractor's right to proceed, the resulting damage will consist of liquidated damages until the work is completed or accepted.

**SCR-4** NOT USED

**SCR-5 CONTRACT DRAWINGS, MAPS, AND SPECIFICATIONS** (DEC 1991) (DFARS 252.236-7001) (CENPA-CO-CA Rev 22 Nov 1989):

(a) The Government--

(1) Will provide the Contractor, without charge, 0 sets of large-scale contract drawings (half-size optional) and 1 set of specifications except publications incorporated into the technical provisions by reference;

(2) Will furnish additional sets on request, for the cost of reproduction; and

(3) Will furnish the Contractor one set of reproducibles of the drawings upon contract award.

(b) The Contractor shall--

(1) Check all drawings furnished immediately upon receipt;

(2) Compare all drawings and verify the figures before laying out the work;

(3) Promptly notify the Contracting Officer of any discrepancies; and

(4) Be responsible for any errors which might have been avoided by complying with this paragraph (b).

(c) Large scale drawings shall, in general, govern small scale drawings. Figures marked on drawings shall, in general, be followed in preference to scale measurements.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, INC., Plaintiff, | ) | |
| vs. | ) | No. 04-487C |
| THE UNITED STATES, Defendant. | ) | |

**DEPOSITION OF ROGER L. BROWN**

January 10, 2006

Seattle, Washington

Byers & Anderson, Inc.
Court Reporters/Video/Videoconferencing

One Union Square
600 University St.
Suite 2300
Seattle, WA 98101
(206) 340-1316
(800) 649-2034

2208 North 30th Street, Suite 202
Tacoma, WA 98403
(253) 627-6401
(253) 383-4884 Fax
scheduling@byersanderson.com
www.byersanderson.com

Serving Washington's Legal Community Since 1980

Q And for Mr. Douglass, it struck me as being almost everything; some geotechnical things, some contract interpretation things, and that nature.
And there seems to be some overlap between what you said and what Mr. Douglass said. Is that fair to say?
A That's fair.
MR. HOPKINS: Object to the question. It's pretty vague and broad and fairly ambiguous. The reports are fairly detailed as to what opinions the subject matters are being addressed.
Q (By Mr. Prouty) What I'm trying to get at, Mr. Brown, is, can you tell me sort of what the difference in approach between -- what, if any, difference in approach there would be between you and Mr. Douglass?
A Approach in --
MR. HOPKINS: Object.
Q (By Mr. Prouty) In the way you basically looked at the questions that were asked of you. Is there any difference in expertise, for example, that you each bring to bear on the subject?
A Mr. Douglass is a geotechnical engineer.
Q Yes.
A That's his -- basically, his entire career has focused on that. My career has been more focused as a

builder, as a contractor.
Q I'm sorry; I --
A As a builder.
Q Okay.
A I had worked for the California Highway Department for a while. But the majority of my career has been working for contractors. And recently, consulting, as my résumé describes.
So if there's an overlap, it's probably because I'm looking at things as a contractor, as a bidder -- or as a builder; whereas, he's looking at it from a geotechnical engineer.
Q That's helpful. Thank you.
Now, have you had an opportunity to read Mr. Riddle's report?
A Yes, I have.
Q And are there things about that report which you disagree with?
A Yes.
Q Could you tell me what they are?
A I believe -- I believe I've addressed those.
Q Now, I received -- when you say "I believe I addressed them" --
A Mr. Riddle's report, one thing I did, as a recent work product, was to calculate quantity of material that

up. That's typical with any dredge with a cutterhead. It will break the material up, and then your productivity is typically, after that, is typically what the machine is designed to do for it.

Q On Page 4, under Paragraph 1, the last bullet, the last sentence of the last bullet, where it says, "The COE" -- I assume that means the Corps of Engineers -- "expected that RSC would so rely on contract soils data," what is your basis for saying that?

A My experience and the testimony of the Corps witnesses.

Q Is there anything in the contract documents that forms your basis for saying that?

A The fact that they're there. The fact that the soils -- the soils information is in the contract documents implies that it has a use.

Q Are you familiar with something called the ASTM?

A Yes.

Q And what is the ASTM?

A American Society of Testing Materials, I believe, is the common name for it. It's a widely used guide for soils investigation and testing.

Q And is it an industry standard?

A Yes.

Q Is there any competing standard in the industry

besides ASTM?
A Yes, there's some.
Q Which ones?
A Well, I'm familiar -- for an example, I said I worked for the California Highway Department. They had some of their own standards they developed years ago, that I recall were different -- or slightly different.
Recently, I don't recall others. That's the one that's typically used now.
Q When you're saying that's the one that's typically used now --
A The ASTM.
Q Okay. And does ASTM include things like definitions?
A I'm sorry?
Q Does it include things like definitions?
A Yes.
MR. HOPKINS: Objection. Vague and ambiguous.
Q (By Mr. Prouty) And, for example, the term "cobble," is that term found in ASTM?
A I believe it is.
Q And do you recall what it had cobbles defined as in the ASTM?
A It's material, as I recall, between three inches and twelve in diameter.

A That would be one -- one of the locations. And textbooks and soils books could be another.
Q Would it have to be the Webster's New World Dictionary?
A For terms of --
Q For terms like cobbles, gravels, sands, silts?
A Probably not.
Q Now, go to Page 5 of your report, top bullet. You say that you use the word -- for the word "few," you went to the Webster's Dictionary; correct?
A Correct.
Q Why did you go to Webster's Dictionary?
A Because the term was used, "few," to describe the amount of cobbles in the soils exploration on this job. And that didn't tell me whether it was one cobble or ten or 2 percent or 20 percent, which is what I would have needed to know.
Q Okay.
A And so it's a very ambiguous term. So I said, what's the dictionary say?
Q Do you think the dictionary makes it any less ambiguous?
A Any less ambiguous?
Q Yes.
A As far as the interpretation for this project, yes.

Because, for me, it tells me there is a very, very small number -- not many; infrequent, seldom, a handful --

(Telephonic interruption.)

(Answer on Pages 27-28, Lines 25 through 3, read by the reporter.)

A And, therefore, I'm trying to think of what the author meant. It's an ambiguous term. That's what Webster helps me define it as. That's how I concluded my opinion, that it would probably be in the neighborhood of 1 percent.

Q (By Mr. Prouty) Did you have reason to believe that the author of the contract document had gone to Webster's New World Dictionary?

A No, I didn't -- don't have any particular reason, until I read his deposition and I understood what he -- what he was trying to say.

Q Right. In his deposition, did he say that he went to Webster's New World Dictionary?

A No. He said it was a considerable amount of cobbles, and that's what he was trying to tell people.

Q Does the ASTM define the term "few"?

A I don't recall that it does.