No. 04-487 C
(Judge Block)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# GOVERNMENT'S OPPOSITION TO PLAINTIFF'S CROSS- MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE, JR.
Assistant Director

J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.,
Washington, D.C. 20530
Tele: (202) 305-7586

Attorneys for Defendant

June 5, 2006

**TABLE OF CONTENTS**

**PAGE(s)**

I. Travelers Cannot Support A Type I Differing Site Conditions Claim . . . . . . . . . 1

A. The Solicitation's Terms Do Not Support A Type I Differing Site Condition Claim . . . . . . . . . . . . . . . . . . . . . . . . . 2

1. To Support A Type I Differing Site Condition Claim, The Contract Documents Must Make Affirmative Representations Of The Conditions To Be Encountered . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

2. Travelers Cannot Prove That The Contract Documents Affirmatively Represented That The Cobble Percentages Would Be Lower Than Those Red Samm Actually Encountered . . . . . . 3

B. Travelers Cannot Recover Because Red Samm Did Not Rely Upon The Corps Test Pit Logs . . . . . . . . . . . . . . . . . . . . . . 7

1. A Contractor May Not Recover Upon A Differing Site Condition Claim Unless It Actually Relied Upon The Allegedly Deficient Specifications . . . . . . . . . . . . . . . . . . . . . . . . 7

2. Travelers Cannot Recover Because Red Samm Did Not Rely Upon The Corps Test Pit Logs . . . . . . . . . . . . . . . . 7

C. Travelers Cannot Recover Because Red Samm Did Not Consult The Golder Report, Which, It Admits, Would Have Warned Red Samm Of The Site Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

D. Travelers Cannot Recover Because Red Samm Did Not Seek Clarification Of A Patent Ambiguity . . . . . . . . . . . . . . . . . . . . 10

II. Travelers Cannot Support Its Misrepresentation Claim . . . . . . . . . . . . . . . . . . . 11

III. Travelers' Superior Knowledge Claim Should Be Dismissed . . . . . . . . . . . . . . . . 16

IV. Travelers Is Owed Nothing Upon Its Contract Balance Claim . . . . . . . . . . . . . 17

V. Travelers Is Not Entitled To Summary Judgement In Its Favor . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

A.S. McGaughan Company, Inc. v. United States,
24 Cl. Ct. 659 (1991) . . . . . . . . . 9

American Ship Building Company v. United States,
228 Ct. C 654 F.2d 75 (1981) . . . . . . . . . 16

Appeal of Power City Electric Inc.,
74-1 BCA § 10376, 1973 WL 1323 (I.B.C.A 1973) . . . . . . . . . 13

Christie v. United States,
237 U.S. 234 (1915) . . . . . . . . . 13

Comtrol, Inc. v. United States,
294 F.3d 1357 (Fed. Cir. 2002) . . . . . . . . . passim

Crest A Apartments, Ltd. II v. United States,
52 Fed. Cl. 607 (2002) . . . . . . . . . 13

Wilner v. United States,
24 F.3d 1397 (Fed. Cir. 1994) . . . . . . . . . 12

Foster Const. C.A. & Williams Brothers Co. v. United States,
193 Ct .Cl. 587, 435 F.2d 873 (1970) . . . . . . . . . 5

H.B. Mac, Inc. v. United States,
153 F.3d 1338 (Fed. Cir. 1998) . . . . . . . . . 2, 3

Hollerbach v. United States,
233 U.S. 154 (1914) . . . . . . . . . 13

L.G. Everist v. United States,
231 Ct. Cl. 1013 (1982) . . . . . . . . . 17

P.J. Maffei Bldg. Wrecking Corp. v. United States,
732 F.2d 913 (Fed. Cir. 1984) . . . . . . . . . 3, 10

Postashnick v. United States,
123 Ct. Cl. 105 F. Supp. 837 (1952) . . . . . . . . . 13

TABLE OF AUTHORITIES
-continued-

**CASES** **PAGE(s)**

Randa/Madison Joint Venture III v. Dahlberg,
239 F.3d 1264 (Fed. Cir. 2001) . . . . . . . . . . 9

T. Brown Constructors, Inc. v. Pena,
132 F.3d 724 (Fed. Cir. 1997) . . . . . . . . . . 13, 15

United States v. Atlantic Dredging Co.,
253 U.S. 1 (1920) . . . . . . . . . . 13, 14

United States v. Margolis,
138 F.2d 1002 (3rd Cir. 1943) . . . . . . . . . . 10

Weeks Dredging & Contr., Inc. v. United States, 13 Cl. Ct. 193, 218 (1987), aff'd, 861 F.2d 728 (Fed. Cir. 1988) . . . . . . . . . . 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 04-487C<br>(Judge Block) |

**GOVERNMENT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 7.2(e) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this opposition to Travelers' cross-motion for summary judgment and reply in support of our earlier-filed motion for summary judgment and respectfully requests that the Court enter summary judgment in our favor because there are no genuine issues of material fact in this case and defendant is entitled to judgment as a matter of law. In support of our motion, we rely upon plaintiff's pleadings, our briefs, and the Proposed Findings of Uncontroverted Fact which accompanied our moving brief.

I. Travelers Cannot Support A Type I Differing Site Conditions Claim

The reasons why Travelers must fail in its Type I differing site conditions claim are over-determined - i.e., they are multiple and independent, but, at their heart, they reflect the undisputed fact that the relatively indeterminate description of cobble percentages, as reflected in a few Government test pits and bore holes taken outside of the dredging area, to quote Red

Samm's Vice President, just "wasn't a concern." DPFUF 23.[1] As we demonstrated in our moving brief, Travelers cannot prevail in its Type I differing site condition claim because the relevant contract terms, which its experts and personnel have declared to be ambiguous with regard to percentages of cobbles, cannot be said to make an affirmative representation regarding the percentages of cobbles throughout the dredge area. Moreover, the facial ambiguity of such terms, if truly important and relied upon by Red Samm, should have invited an inquiry by Red Samm, but did not. Indeed, despite Travelers' best attempts to create issues of fact where none exist, there is no real evidence that the Government-supplied data regarding cobble concentrations was specific or useful enough to Red Samm to ever be relied upon in deciding its dredging method. Finally, despite Travelers' best efforts to disavow assertions it made in order to advance its superior knowledge claim, Red Samm was upon constructive knowledge that cobble percentages might be higher than those it now states were represented in the contract specifications.

A. The Solicitation's Terms Do Not Support A Type I Differing Site Condition Claim

Travelers' "Response To Government's Motion For Summary Judgment And Plaintiff's Cross-Motion For Summary Judgment" ("Travelers' response") utterly fails to demonstrate the affirmative misrepresentation of site conditions by the contract provisions which are a sine qua non of a Type I differing site conditions claim. See, e.g., H.B. Mac, Inc. v. United States, 153 F.3d 1338, 1342 (Fed. Cir. 1998). Instead, it wrongly focuses upon legally irrelevant assertions regarding the intent of the Corps of Engineers ("the Corps").

[1]"DPFUF__" refers to a paragraph of our "Proposed Findings of Uncontroverted Fact" filed with our Motion for Summary Judgment.

1. To Support A Type I Differing Site Condition Claim, The Contract Documents Must Make Affirmative Representations Of The Conditions To Be Encountered

Travelers does not seriously dispute our statement of the law that, to recover for a Type I differing site condition, a contractor must prove that the contract documents affirmatively represented certain conditions and that the actual subsurface conditions differed materially from those represented in the contract. Weeks Dredging & Contr., Inc. v. United States, 13 Cl. Ct. 193, 218 (1987), aff'd, 861 F.2d 728 (Fed. Cir. 1988); H.B. Mac, 153 F.3d at 1342. Nor does it challenge the law that, for there to be an "affirmative representation" of conditions, the contract must contain "reasonably plain or positive indications" that conditions would be more favorable than those actually encountered. P.J. Maffei Bldg. Wrecking Corp. v. United States, 732 F.2d 913, 916 (Fed. Cir. 1984). When a specification does not affirmatively represent that only certain materials will be found, it does not support a Type I differing site condition. Comtrol, Inc. v. United States, 294 F.3d 1357, 1363 (Fed. Cir. 2002).

2. Travelers Cannot Prove That The Contract Documents Affirmatively Represented That The Cobble Percentages Would Be Lower Than Those Red Samm Actually Encountered

Travelers' response to our motion makes one thing clear: the contract specifications made no definitive representations regarding cobble percentages in the dredge area. Putting aside Travelers' allegations of the Corps' intent with regard to specifications, see Pl. Resp. 10,[2] which it makes no effort to demonstrate to be legally relevant[3], Travelers primary discussion of

[2] "Pl. Resp. __" refers to a page of Travelers' response.

[3] Travelers' remarks regarding "loose soil," see Pl. Resp. 10, are also irrelevant for that alleged differing site condition is simply neither in their claim nor their amended complaint.

the content of the specifications demonstrates that they show inconsistent conditions. See Pl. Resp. 10.

The representations of subsurface conditions in the contract came from the boreholes and the test pits. DPFUF 3-4. Travelers fails to demonstrate that either affirmatively shows an inaccurate percentage of cobbles which a contractor could read as applying throughout the site. First, Travelers asserts that the boreholes made a representation of "0%" cobbles in the dredge area. See Pl. Resp. 10-11. This assertion is disingenuous because, as Travelers is aware (and, in fact, affirmatively claims), the borehole logs were not within the dredge area (Pl. App. 337[4])[5] and are "not a suitable method for determining oversize materials," see Pl. App. 336, such as cobbles, because they cannot be sampled by it. Id. Moreover, an examination of the borehole logs makes clear that nowhere upon their face do they quantify the percentage of cobbles. See Pl. App. 221-37.[6] Thus, given their location; their unsuitability for determining cobbles[7]; and the utter lack of affirmative representation regarding cobbles, there is no basis for finding the

[4] "Pl. App. __" refers to a page of "Appendix To Plaintiff's Response To Defendant's Proposed Findings Of Uncontroverted Facts And Plaintiff's Additional Proposed Findings Of Uncontroverted Facts."

[5] Thus, Travelers is plainly mistaken in its motion when it refers to the "soil borings . . . within the dredge limits," Pl. Resp. 11, because the Corps provided no soil borings within the dredge limits. Pl. App. 337. Indeed, one of Travelers' own proposed findings of uncontroverted fact (number 60), affirmatively states that the borings were not inside of the dredge area.

[6] Due to a photocopying error, we did not include the entire set of borehole logs in our appendix following our Proposed Findings Of Uncontroverted Fact. We apologize for this mistake.

[7] Of course, just because the borehole logs were unsuitable for determining cobble concentrations, does not mean that they were completely without value for providing other subsurface data. It merely means that the contractor would need to use other sources of data to determine cobble concentrations if those concentrations were important to him.

boreholes to affirmatively represent a percentage of cobbles. See Comtrol, 294 F.3d at 1363.[8]

Travelers' discussion of the test pit logs, see Pl. Resp. 10-11, is even more unpersuasive, for it demonstrates, without perhaps recognizing so, that the pits showed variance in the concentration of cobbles to be encountered, but never made representations regarding their percentages, much less, percentages throughout the dredge area. First, we note that every single test pit indicated that cobbles were encountered. DPFUF 5-9. Moreover, not a single test pit set forth a limit on cobble percentages in any portion of their dig, except, arguably, Test Pit 4[9], which reflected only gravel for the last eight feet of depth. See DPFUF 8. There is simply no numerical description of the cobble percentages in the test pit logs from which a contractor could conclude that there was an affirmative representation by the Corps of the number of cobbles throughout. Indeed, Traveler's response spends a significant amount of time indicating that most of the five test pits were poorly located for a determination of cobbles within the dredge area, and discounts those which, according to its geologic interpretation, do not advance its case. See Pl. Resp. 11. At the same time, however, Travelers ignores the testimony of its own expert, who agreed that one would expect a variation of cobble percentages, especially in a marine depositional environment like that encountered in Alaska. Supp. App. 31.[10]

---

[8] To the extent that Travlers cites a case regarding the utilization of boreholes as "the most reliable" indicator of subsurface conditions, see Pl. Resp. 9, plainly that does not constitute a finding of law relating to cobbles, but is a recognition of the importance of the logs in the particular facts of the case cited. See Foster Const. C.A. & Williams Brothers Co. v. United States, 193 Ct.Cl. 587,__, 435 F.2d 873, 888 (1970), citing United Contractors v. United States, 177 Ct.Cl. 151, 166. 368 F.2d 585, 598 (1966) (relating to finding subsurface water).

[9] Test Pit 4, as Travelers recognizes, was not actually in the limits of the area to be dredged. PPFUF 55.

[10] "Supp. App. __" refers to a page of the Supplemental Appendix filed with our Opposition To Plaintiff's Proposed Findings Of Uncontroverted Facts.

In any event, for all of Travelers' misdirection, the question is crystallized into this essence: does the annotation "few cobbles" upon two test pit logs constitute an affirmative representation of cobble percentages throughout a dredge area, which would be inherently variable in any event? The answer must be no. First, Travelers has identified no contract provision which provides that the conditions throughout the project will be identical to those in individual test pits. Moreover, the variability of the test pits included in the specifications combined with a recognition that there will necessarily be variability of cobble percentages in an area such as King Cove, foreclose that interpretation (i.e., since they were all different, it would be literally impossible for one to interpret the dredge area as being the same as the test pits – the same as which test pit?). Furthermore, "few" is an ambiguous term, which even Travelers' own expert recognized, in common use, could be "two percent or 20 percent." DPFUF 15. Travelers' recourse to the dictionary to better define few is not helpful because the dictionary definition cited uses unqualitative terms, such as "small number" or "not many." Pl. Resp. 11, n.2. Only one authority cited by either party, the ASTM, attached a specific numeric percentage to the word "few," see DPFUF 14, and Travelers' response rejects utilization of this definition out of hand, Pl. Resp. 16, 22, as it must in order to prevail upon its misrepresentation claim. See AC 7.1-7.5[11]; Pl. Resp. 4 (if Red Samm had "known" cobble to be five to ten percent of materials, it would have avoided the costs associated with this claim).

[11] "AC__" refers to a paragraph of Plaintiff's First Amended Complaint.

B. Travelers Cannot Recover Because Red Samm Did Not Rely Upon The Corps Test Pit Logs

1. A Contractor May Not Recover Upon A Differing Site Condition Claim Unless It Actually Relied Upon The Allegedly Deficient Specifications

Regardless of whether the reliance must be manifested pre-bid, Travelers does not argue against the black-letter law that reliance is a critical element of a differing site conditions claim. See generally, Pl. Resp. 16-17. Moreover, simply having possessed the contract documents does not constitute reliance, but the plaintiff must prove that it was actually misled by them. See Comtrol, 294 F.3d at 1364 (suggesting that the requirement of being misled, which applies to the "closely related" field of erroneous specifications should apply to a differing site conditions case). This, of course, is a logical application of law, for the idea of a Type I differing site condition is that a contractor actually be misled by the contract documents.

2. Travelers Cannot Recover Because Red Samm Did Not Rely Upon The Corps Test Pit Logs

Despite Travelers' best efforts to suggest that Red Samm's subcontractors detrimentally relied upon the contract data to believe that there were a materially smaller percentage of cobbles present than actually encountered, the evidence produced for its response merely demonstrates, at most, that the contract specifications were provided to them, not that they were misled by them.

In this case, where Travelers has generally argued that the primary cause of damages was its decision (based upon the allegedly misleading contract documents) to attempt hydraulic dredging, see Pl. Resp. 4, the consideration of a "clam-shell" dredging subcontractor, like Mr. Brannon, (see Pl. App. 369-70) is of less importance than that by DeGroot, which allegedly told

Red Samm that its hydraulic dredging equipment could handle the materials at King Cove.

Mr. Heeter, Red Samm's Vice President, agreed, in his testimony, that the information provided to DeGroot to determine whether their dredge would work at King Cove was based upon gradations which did not use Corps data. App. 80-81.[12] Despite producing a seven-page declaration in support of Travelers' response, Mr. Heeter did not return to address the issue of what information was provided to DeGroot. See Pl. App. 299-305. Mr. Lutterbach's declaration, see Pl. App. 306-07, sheds little more light upon the data considered by DeGroot engineers and their reliance upon it. He merely states that he gave the contract documents and the gradations performed by Red Samm to the DeGroot engineers and that it was his "understanding" that "all this information was considered by DeGroot in their recommendation of appropriate dredging equipment for the project." Id. Never mind that Mr. Lutterbach's statements border upon speculation and do not represent the personal knowledge necessary for an affidavit under the Court's rules, see RCFC 56(e); they do not in any way indicate that the Corps data misled the DeGroot engineers, for they in no way demonstrate that the DeGroot engineers relied upon that data or interpreted "few" in the test pits to mean anything. To the contrary, Mr. Heeter's deposition testimony much more clearly demonstrated that the information upon which DeGroot suggested the dredging was feasible was Red Samm's own testing and gradations. App. 68. As demonstrated in our moving brief, Red Samm's subsurface investigation prior to determining to use hydraulic dredging was far more comprehensive than that undertaken by the Corps (see DPFUF 26) and the suggestion that Red Samm relied upon

[12] "App. __" refers to a page of the appendix following our original Proposed Finding Of Uncontroverted Facts.

the Corps documents, but not its own investigation strains credulity.

Mr. Brannon's declaration regarding his pre-bid subcontract quote, see Pl. App. 369-70, is of little assistance to Travelers. He merely makes the conclusory assertion that he relied upon the contract specifications when making his bid, but does not indicate in which way he was misled by the specifications. Pl. App. 370.

C. Travelers Cannot Recover Because Red Samm Did Not Consult The Golder Report, Which, It Admits, Would Have Warned Red Samm Of The Site Conditions

Travelers does not dispute that it is upon implied notice of site conditions mentioned in documents referenced in the contract specifications. See Randa/Madison Joint Venture III v. Dahlberg, 239 F.3d 1264, 1270-72 (Fed. Cir. 2001); see also A.S. McGaughan Company, Inc. v. United States, 24 Cl. Ct. 659, 666 - 667 (1991). Nor does Travelers dispute the fact that a proper inquiry on its part would have yielded the Golder Report from the Corps. Instead, it attempts to make the argument that the wording of the Golder Report upon cobbles was so "generalized" as to not overcome the allegedly more specific data in the test pit logs. Pl. Resp. 12-13. This argument fails, in large part, because of the testimony of Travelers' expert, Mr. Brown, while attempting to support Travelers' superior knowledge claim.

Mr. Brown was read a portion of the Golder Report referring to the seismic signature of King Cove (not the report's summary of the test pit logs, compare App. 33 to App. 54) and he stated that those words would have "raised a flag" to the contractor regarding cobble concentrations. DPFUF 19, 20. Thus, we are not presented with a circumstance of comparing the "generalized" statements in one part of the specifications with the "more specific" statements in another and being asked to weigh them against eachother, as in those cases cited

by Travelers (see Pl. Resp. 12-13), but are given an instance where, according to plaintiff's expert, documents which Red Samm should have reviewed would have given it a warning regarding the cobble concentrations. This eliminates Travelers' ability to maintain a differing site condition claim. Randa/Madison, 293 F.3d at 1274-76. At the very least, the Golder Report's statements regarding cobble concentrations – which were described as occurring "throughout" the dredge area, as opposed to the much more limited sampling in the individual test pits, see App. 54, – completely demolish the allegation that the ambiguous, unspecific term, "few," in the test pits constitutes an affirmative representation of the conditions throughout the site, in which case dismissal is appropriate. E.g., P.J. Maffei, 732 F.2d at 916.

D. Travelers Cannot Recover Because Red Samm Did Not Seek Clarification Of A Patent Ambiguity

We demonstrated in our moving brief that, unless it is given the meaning of five to ten percent, the word, "few," in the contract specifications was patently ambiguous; is recognized as such by Travelers; and that Red Samm had a corresponding obligation to make inquiry upon its meaning if it wished to recover. Travelers' response, in large part, is focused not upon the contract terms, which determine ambiguity, but upon actions taken many years later and which are irrelevant.

First, we note that "few" as a descriptor of a percentage of cobbles, cannot be seen as an unambiguous term (with one exception to be discussed below). Both of Travelers' experts described it as ambiguous in their oral testimony and Mr. Douglass wrote that it was an "ambiguous qualitative term" in his written report. DPFUF 15,16. No dictionary definition cited by Travelers or Red Samm assigns a percentage to it and those definitions it does cite are inherently relative (e.g., "small number, not many," Pl. Resp. 19). As cited by Travelers, see Pl.

Resp. 19, in the context of a particular set of questions, the court in United States v. Margolis, 138 F.2d 1002 (3rd Cir. 1943), was able to determine that "a few months" meant two or three months, but Margolis does nothing to dispel the uncertainty of "few" in the context of cobble percentages in test pits. Indeed, that is precisely why Black's Law Dictionary, as cited in our moving brief, considered it to be "a relative term with great elasticity of meaning." See 5th Ed (1979). We did not, as Travelers would have it, cite Black's Law Dictionary for purposes of defining few, see Pl. Resp. 19, but for its characterization of the word. No authority except the ASTM, as discussed below, suggests a definitive meaning of "few."

Whether other contractors recognized "few" as ambiguous to the extent that they sought clarification from the Corps is of no legal relevance. Travelers has not produced evidence of whatever other knowledge the other contractors bidding upon the project possessed. Numerous possibilities, such as the notion that other putative contractors possessed enough experience dredging in the Aleutians to determine for themselves the kind of conditions to be encountered, or that they conducted their own site investigations, all present themselves. We would suggest that the most likely reason that no inquiry was made was that no contractor (including Red Samm) looked to the test pit logs as affirmatively representing cobble percentages throughout the project and, not relying upon them, found them unimportant. The key here is not what others did, but that Travelers now asserts that Red Samm relied upon and placed an extraordinary emphasis upon the test pits' representation of "few." If this were, in fact, the case, then Red Samm had an obligation to understand this term, upon which its multi-million dollar enterprise allegedly rested.

The suggestion that the Government's advancement of the patent ambiguity defense at

the dispositive motion stage should somehow be considered as arguing against the finding of patent ambiguity, see Pl. Resp. 20, is not supportable. In fact, the belief by the Corps that contract documents were unambiguous makes the point of why the patent ambiguity rule exists in the first place: to allow the Government to correct ambiguities known by the contractor, but not recognized by it. The contracting officer and Mr. Wilson certainly believed that, flowing from the ASTM definitions, "few" meant five to ten percent, DPFUF 14, and that the term was thus not ambiguous. Pl. App. 288. Had an inquiry been made prior to the alleged reliance by Red Samm, there is no reason to believe that the Corps would not have given this answer. If, however, one does not rely upon the ASTM definition, then the word, "few," as an indicator of percentage, must be ambiguous. Of course, legally, the contracting officer's final decision is irrelevant in this Court because a plaintiff's claim is reviewed de novo. Wilner v. United States, 24 F.3d 1397 (Fed. Cir. 1994) (en banc).

Travelers' suggestion that the Corps was upon constructive notice of the patent ambiguity because it drafted the specifications, see Pl. Resp. 20-21, is nonsensical and unsupported by the law. Taken to its logical conclusion, there would never be a Government defense of patent ambiguity because the Government would always be upon notice of its existence. The Corps plainly thought its interpretation, resting upon the ASTM, was unambiguous; but any departure from the ASTM understanding of "few" would create patent ambiguity which Red Samm would have been obligated to clarify.

Finally, Travelers asserts that any claim of patent ambiguity is overcome by the Government's failure to disclose its use of the ASTM standards. Pl. Resp. 21. Travelers' argument is neither supported by the law nor the facts. The Board of Contract Appeals opinion cited by Travelers, Appeal of Power City Electric Inc., 74-1 BCA § 10376, 1973 WL 1323 (I.B.C.A 1973), does not control the circumstances here because it was not about a patent ambiguity and dealt with a case in which the Government purposely withheld data from the contractor. Moreover, the Corps cannot be said to have had an independent duty to disclose its use of ASTM procedures when, as demonstrated in our earlier motion and Travelers' pleadings, the Corps did not follow all such procedures, as evident in the test pit logs.

## II. Travelers Cannot Support Its Misrepresentation Claim

We demonstrated in our moving brief that Travelers' misrepresentation claim was primarily a rephrasing of its Type I differing site conditions claim. Nothing in Travelers' response challenges our description of the law nor demonstrates why Travelers should recover upon misrepresentation theories when it cannot do so under the Type I differing site conditions claim.

Travelers does not dispute our citation of the elements of a misrepresentation claim, which is that, "the contractor must show that the government made an erroneous representation of a material fact that the contractor honestly and reasonably relied on to the contractor's detriment." T. Brown Constructors, Inc. v. Pena, 132 F.3d 724, 729 (Fed. Cir. 1997). Travelers' description of misrepresentation cases, such as United States v. Atlantic Dredging Co., 253 U.S. 1 (1920); Christie v. United States, 237 U.S. 234 (1915); Hollerbach v. United States, 233 U.S. 154 (1914); and Postashnick v. United States, 123 Ct. Cl. 197, 105 F. Supp.

837 (1952), see Pl. Resp. 21-22, is, nevertheless, oversimplified. Travelers' response appears to suggest that a Government failure to provide information in its possession to a contractor constitutes misrepresentation. In fact, the cases only found misrepresentation in those instances in which the Government withholding of data caused the other representations made by the Government to be inaccurate.

The gravamen of Travelers' misrepresentation claim appears to be that Mr. Wilson, the Corps' geotechnical engineer, saw cobble percentages of five to ten percent in two test pits, but wrote "few cobbles," which is allegedly misleading, and that, for another test pit, his description of "with cobbles" inaccurately described the number of cobbles, which was greater than five percent. Pl. Resp. 22. At bottom, this is functionally no different than the differing site conditions claim, which alleged that the test pits affirmatively misrepresented the nature of the materials to be encountered. In any event, as discussed at length in Section I, above, and in our previous brief, "few" is no misrepresentation of what Mr. Wilson observed, and, most certainly, its use does not convert the test pit logs into items which would mislead the bidder in the way, for example, that affirmatively inaccurate Government-created maps did in the Atlantic Dredging case. Of course, as discussed in Section I above, Travelers has still not proven the requisite element of reliance.

Travelers attempts to burnish its misrepresentation claim by underscoring the alleged importance of reporting specific numerical percentages of cobbles instead of using descriptive adjectives. See Pl. Resp. 22. This argument only weakens Travelers' case, for, if the lack of a number in the test logs were such a "failure to follow an industry standard," id., then it would have been apparent on the face of the document (which plainly lacked numbers) and Travelers

cannot have relied upon it.[13] Moreover, the use of adjectives to describe percentages of oversized materials such as cobbles is not precluded by the ASTM as Travelers claims. One of the examples of an appropriate soil descriptions provided by the ASTM, uses the word "trace" (connoting less than five percent) to describe the presence of boulders, see App. 42, para X1.1.5, even though boulders are an oversized material like cobbles, which Travelers asserts are required to be described numerically, and not with adjectives.

Finally, Travelers returns to its argument that the "generalized" information in the Golder Report did not overcome the "more specific" test data. Pl. Resp. 23-24. As discussed above, the problem with this argument is that the questionable test pit data was no more specific here[14] than the Golder report, which also used an adjective to describe cobbles. The inconvenient fact ignored by Travelers is that Mr. Brown, upon behalf of Travelers, asserted that the language in the Golder report should have "raised a flag" to Red Samm if only it had been considered. DPFUF 19, 20. We finally note that, regardless of the specificity issues advanced by Travelers, the Golder Report's description of cobbles and boulders "exist[ing] throughout the site," DPFUF 18, is inconsistent with the "reasonable geologic interpretation" of the area which Travelers claims that Red Samm held, in which there were little or no concentrations of cobbles in the dredge area. Pl. Resp. 11.

---

[13] This is distinguished from the failure to follow the industry standard in T. Brown Constructors, because in that case, the contractor would have no reason to know that the very specific laboratory results provided by the Government were inaccurate because the industry standard for producing them had not been followed. 132 F.3d at 728.

[14] Assuming, of course, that "few" did not mean five to ten percent. If it did mean five to ten percent, as discussed earlier, Travelers would have no claim. Pl. Resp. 4.

## III. Travelers' Superior Knowledge Claim Should Be Dismissed

As we demonstrated in our moving brief, Travelers' superior knowledge claim must fail because the Corps withheld no knowledge from Red Samm which it had reason to believe that Red Samm could not determine for itself. American Ship Building Company v. United States, 228 Ct. Cl. 220, 225, 654 F.2d 75, 79 (1981). In response, Travelers appears to abandon the claims contained in paragraphs 8.2 and 8.3 of its amended complaint, regarding the ASTM standards and the Corps geotechnical report, and makes a new claim that the superior knowledge withheld was the actual percentage of cobbles observed by Mr. Wilson. See Pl. Resp. 24. Travelers cannot change its theory of recovery this late in the litigation. See Crest A Apartments, Ltd. II v. United States, 52 Fed. Cl. 607, 613 (2002) (claims not pled in complaint not considered upon motion for summary judgment). Moreover, even if the Court were to consider Travelers' new claim here, it should be dismissed because the Government withheld no vital fact from Red Samm and the Government had no reason to believe that Red Samm could not obtain the information it possessed.

As demonstrated above, the Government did not withhold Mr. Wilson's evaluation from Red Samm and it provided his adjectival description (inter alia, "few") to all bidders. When Travelers facetiously suggests that Red Samm would have needed telepathy to understand what Mr. Wilson meant by his words, see Pl. Resp. 24, it ignores the most obvious way of seeking understanding of words felt to be ambiguous or unclear: simply asking.

Moreover, Travelers has made no demonstration, whatsoever, that the Government had reason to believe that it was withholding critical data from Red Samm which it could not get, itself. We demonstrated in our moving brief that Red Samm possessed greater amounts of data

than the Corps and that it had full access to the dredge site to perform whatever tests it chose. The question is not whether the Corps had superior knowledge of Mr. Wilson's thought processes, but whether it had superior knowledge of the site conditions. See L.G. Everist v. United States, 231 Ct. Cl. 1013 (1982) (conclusions of Government geologist irrelevant to superior knowledge claim when plaintiff had equal access to site from which to draw its own conclusions).

IV. Travelers Is Owed Nothing Upon Its Contract Balance Claim

In our moving brief, we explained why the Government withheld liquidated damages from Red Samm. Travelers agrees that this claim is contingent upon its success in the differing site conditions and other claims. Pl. Resp. 25.

V. Travelers Is Not Entitled To Summary Judgement In Its Favor

Under no theory, is Travelers entitled to judgment in its favor because the Court should enter judgment in favor of the Government for the reasons stated here and in our moving brief. Nevertheless, we note that, if the Court finds factual disputes in any number of areas, judgment for Travelers is foreclosed. For example, we have demonstrated that Red Samm did not rely upon the allegedly incorrect information in the test pit logs, which would constitute a fact in dispute even if Travelers' affidavits were read liberally enough to contradict the Government's proposed findings of uncontradicted fact. Moreover, Travelers' alleged damages are far from undisputed as it claims, see Pl. Resp. 18, for the Corps has produced evidence (albeit, evidence which is highly disputed by Travelers) that Red Samm's problems in dredging were largely of its own making. See Supp. App. 7.

## CONCLUSION

For the foregoing reasons and for the reasons stated in our moving brief, the United States respectfully requests that this Court grant summary judgment in its favor, deny Travelers' cross-motion for summary judgment, and enter an order dismissing the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 305-7586
Fax (202) 514-7969
Attorneys for Defendant

June 5, 2006