IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, INC., Plaintiff, | ) |
| vs. | ) No. 04-487C |
| THE UNITED STATES, Defendant. | ) |

**DEPOSITION OF PETER M. DOUGLASS**

January 12, 2006

Seattle, Washington

Byers & Anderson, Inc.
Court Reporters/Video/Videoconferencing

One Union Square
600 University St.
Suite 2300
Seattle, WA 98101
(206) 340-1316
(800) 649-2034

2208 North 30th Street, Suite 202
Tacoma, WA 98403
(253) 627-6401
(253) 383-4884 Fax
scheduling@byersanderson.com
www.byersanderson.com

Serving Washington's Legal Community Since 1980

that right?
A Sure.
Q Okay.
A But it depends, you know, on what it is. You have to, I think, quantify or identify what variability you're talking about.
Q Sure.
Might you expect a variability in the percentages of cobbles, for example?
A Sure.
Q At some places, you might find a lot of cobbles; in other places, not so many? Would that be fair to expect?
A I think that, you know, marine deposits, depending on the type of marine environment, if you have a -- what we refer to as a slack-water type environment, you get a lot of fines deposited because the water just sits. You know, when you get into a high energy, such as a shoreline situation in Alaska, I think that you can expect a higher degree of variability.
Q Okay. And one last sort of bit about the whole sort of mega -- meta picture about what a contractor should or should not do in general.
A Okay.
Q If a contractor has knowledge that is contrary to that

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**
**vs.**
**THE UNITED STATES**

**No. 04-487**

# ANALYSIS OF ALLEGED DIFFERING SITE CONDITIONS

# KING COVE HARBOR IMPROVEMENTS PROJECT KING COVE, ALASKA

**EXPERT REPORT OF CHARLES H. RIDDLE**

**December 8, 2005**

## 1.0 INTRODUCTION

### 1.1 Background

The King Cove Harbor Improvements project at King Cove, Alaska was awarded to Red Samm Construction, Inc. with work scheduled to be performed in 1999 and 2000. The work consisted primarily of 1) construction of a breakwater, and 2) dredging for a new mooring basin. Red Samm essentially completed the breakwater work during 1999, but alleged that differing site conditions were encountered during suction dredging activities performed in 2000. The claim alleged that a large percentage of dredge material contained cobble-size particles in excess of what test pits and test borings indicated. A vicinity map showing the greater King Cove area is attached as Exhibit 1.

Red Samm's claim for differing site conditions was denied by the Contracting Officer for the U.S. Army Engineer District, Alaska. Dredging work was ultimately completed by others. Travelers Casualty and Surety Company of America is now pursuing additional compensation in the principal amount of $2,279,242.09[1], and $213,460.00 for unpaid contract balance, and other amounts that may be proven at trial.

### 1.2 Contract Authorization

This report was prepared under the terms of Contract Agreement No. 4W-CIV01-0596 between the United States Department of Justice and R&M Consultants, Inc., dated June 16, 2004.

[1] Travelers' First Amended Complaint dated October, 2005 indicates differing principal amounts of $2,279,242.09 and $2,729,242.09, respectively.

equal the 50 cubic yards of material described by Red Samm. No information has been provided regarding the actual sample size or the testing procedures utilized.

Red Samm's shoreline excavation testing results are attached as Exhibit 6(b). These samples were reportedly obtained along the shoreline with the average cobble content of 22 percent. Again, as with Red Samm's other testing, no information is provided regarding the testing procedures. However, it is important to note that the total sample weights indicated on Exhibit 6(b) show the sample size to be grossly inadequate for testing. According to ASTM Designation D 75, material with a maximum size of 3 inches requires a sample weight of at least 330 pounds. Larger maximum particle sizes require even larger sample sizes.

Red Samm has also stated that their DOP 3530-LD dredge pump was designed to handle up to 5.5-inch cobbles (see page 3, Introduction, Request for Equitable Adjustment, attached as Exhibit 8). However, Damen Dredging Equipment, the manufacturer of the dredge pump, indicates in their general information that the spherical passage for this equipment is 200 mm, or 7.87 inches (Exhibit 9). It was also interesting to note that Damen's brochure contained a listing of applications including a note that the DOP has applications in "Small scale dredging operations, such as maintenance dredging in ports and canals". This project was clearly not a maintenance project.

Exhibit 10 is a news archive from Damen Dredging Equipment's website. Note that the article states that "When, after some time, the discharge distance becomes too large, an additional booster pump will be added." There is no indication in the record that this additional booster pump was ever added. This may be an important omission by Red Samm that made his chosen equipment even more ineffective for the needs of the project.

Regarding percentage of cobbles, Red Samm has stated that their equipment was capable of dredging 5.5-inch material. In Table 3 above, I have summed both the sample weights and the weight of plus 5-inch material. This equates to 162 pounds of plus 5-inch material from a total of 14,700 pounds, or only 1.1 percent plus 5-inch cobbles.

## 4.0 CONCLUSIONS

In the **First Cause of Action - Differing Site Conditions** (Exhibit 11), it is my opinion that Red Samm did not encounter conditions that differed materially from those indicated in the contract documents. Test pit logs prepared by the USACE-AD clearly indicate the presence of cobbles or cobbles and boulders within each of the five excavated test pits (Exhibit 12). Also, subsequent sampling and testing indicates that the plus 5-inch material is only about 1.1% of the dredged material. Additionally, the prior 1985 test borings drilled for the original harbor facility were advanced using 4¾-inch casing wash and tricone methods. Sampling was performed utilizing a 3-inch O.D. (2.5-inch I.D.) split-spoon driven with a 300-pound hammer. This information was obtained for foundation analysis and does provide data on soil type and stratification. These methods are not conducive for identifying cobbles.

In the **Second Cause of Action - Misrepresentation**, Travelers' complaint takes issue with the government's logging procedures, but conveniently fails to recognize that on Test Pit Logs TP-1 and TP-5, the fine-grained surficial material was indicated as "SM" under the "Soil Legend" column. "SM" is the symbol for "silty sand" under ASTM Designation D 2488-93. Therefore, the contract documents did, in fact, disclose that the government had employed ASTM Designation D 2488-93 by the use of the "SM" group symbol on the test pit logs. Additionally, USACE Engineer Manual EM 1110-1-1804, Geotechnical Investigations, states that "Soils should be described in accordance with ASTM D 2488."

In the **Third Cause of Action - Nondisclosure of Superior Knowledge**, it is my opinion that Red Samm had, or should have had, as much if not more knowledge of the site as the government. This knowledge should have been gained by the contractor since he had access to the site for over one year and constructed the rubble breakwater prior to selecting his type of dredging equipment. The Findings of Fact (Exhibit 13, page 8) indicates that "Red Samm to do some sampling & test to determine the best method for dredging". Also, rivulets (Photo No. 3, Exhibit 3) and lower tides would expose cobbles at the surface. Cobbles and boulders should be expected in glaciated terrains such as King Cove.

In the **Fourth Cause of Action - Unpaid Contract Balance**, I offer no opinion.

Respectfully submitted,

R&M CONSULTANTS, INC.

Charles H. Riddle, C.P.G.
Vice President

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut Corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 04-487C<br>(Judge Block) |

EXPERT REPORT OF DEBORAH K. REIDELL

December 12, 2005

## IV. Conclusion

It is my opinion Red Samm was inexperienced at dredging operations, as evidenced by their dredge configurations and lack of industry standard record keeping. Their decision to use a hydraulic suction dredge in a non-industry standard configuration, and without experience necessary to effectively operate it, was a poor business decision. The ineffective operation of this dredge caused them to get behind in their dredge schedule. By the time they abandoned their hydraulic dredge operation and switched to the clamshell operation (3rd week of August 2000), the majority of time available in their dredge season was gone. The unusual configuration for the clamshell operation caused a slower production rate for that method as well, which caused them to fall further behind. It is my opinion that Red Samm's dredging operations were ineffective, which caused them to be unable to complete the project within the contract completion date.